## Indiana Township Lines Alteration Case.

Argued November 15, 1951; reargued April 17, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Alan D. Riester,* with him *William W. Milnes* and *Brandt, Riester and Brandt,* for appellants.

*Ferdinand T. Weil,* with him *Andrew L. Weil* and *Weil, Vatz & Weil,* for appellees.

OPINION BY ARNOLD, J., November 5, 1952:

The appellants brought a proceeding in the Court of Quarter Sessions of Allegheny County under Article

III, Section 302, of The Second Class Township Code (53 PS §19093-302) which appears in full on the margin,[1] and will be referred to in this opinion as the "alteration of lines section." The petitioners were residents of Indiana, a second class township, and of Shaler, a first class township. Under the Act the court appointed a commission which recommended that the township line between Indiana and Shaler Townships be altered, affecting an area comprising some "350 to 500 acres" with an assessed valuation of more than $564,000; the effect of which was to annex that area of Indiana Township to Shaler Township. On exceptions the court below held that the alteration of lines section of The Second Class Township Code[2] did not apply to an actual annexation, as here, of a large area which comprised ten per cent. of the total assessed valuation of Indiana Township. In other words, the court's position was that the instant case was, in fact, an annexation proceeding whereby a part of a second class township was proposed to be annexed to a first class township, and further that such an annexation was not within the purview of the annexation statutes.[3] The order of the court below will be affirmed.

---

[1] "The courts of quarter sessions may, upon the presentation of a petition, (a) alter the lines of a township and any adjoining township, borough, or city so as to suit the convenience of the inhabitants thereof; (b) cause the lines or boundaries of townships to be ascertained and established; and (c) ascertain and establish disputed lines and boundaries between two or more townships or between townships and cities or boroughs. When any such petition is presented, the court may require the petitioners to file a bond in a sufficient sum to secure the payment of all costs of the proceeding."

[2] If tested by The First Class Township Code, Act of 1949, P. L. 1955, 53 PS §19092-302, the same result obtains because the provisions are identical.

[3] The annexation statutes usually provide a much more comprehensive procedure than in the alteration of a township line.

The statutory provisions concerning first class townships and second class townships were a hodgepodge (as were the many provisions relating to boroughs prior to the adoption of a borough code). The First Class Township Law of 1931, P. L. 1206, 53 PS §19092-101 et seq. was a codification relating particularly to first class townships. A revision of this Act was made by The First Class Township Code of 1949, P. L. 1955, 53 PS §19092-101 et seq. Both of these codes contained a section regarding the alteration of township lines. None of them provided for annexation of a township by a township, although the Act of 1937, P. L. 620, 53 PS §19092-311, contained a provision for annexation of a first class township to a contiguous borough or city, upon the consent of the electors of the township; and the Act of 1939, P. L. 430, 53 PS §19092-312.1 provided for annexation of parts of first class townships *in second class counties.*

The law as to second class townships was codified by the Act of 1933, P. L. 103, "The Second Class Township Law." It contained the provisions relating to the alteration of township lines. It did not provide for any annexation to or of another township. It was re-enacted and revised by the Act of 1947, P. L. 1481, known as "The Second Class Township Code", 53 PS §19093-101. Again there was no provision for annexation, but the section concerning alteration of township lines was retained.

The alteration of lines section was in existence prior to the enactment of any of the codes as to either class township, and was derived from the Act of 1834, P. L. 537, (repealed); the Act of 1854, P. L. 489 (repealed); and the Act of 1861, P. L. 539 (repealed). See history following 53 PS §19093-302 and following 53 PS §19092-302.

Thus it will be seen that no township code made any provision for the annexation by either a first or a second class township of a portion of either a first or second class township. It will also be seen that the Legislature quite well knew what annexation was, for by the Act of 1937, P. L. 620, 53 PS §19092-311, with the consent of the electors, a first class township or a part thereof may be annexed to a contiguous borough or city. The same is true of the Act of 1939, P. L. 430, 53 PS §19092-312.1, which provided that in counties of the second class a portion of a first class township (when it does not exceed 20% or more of the assessed valuation) can be annexed to a contiguous second class city or borough, or other contiguous township of the first class; but the proceedings for such annexation require much more than the alteration of township lines section,—principally the consent of 80% of the electorate affected.

In the alteration of lines section it is not mandatory to give notice to any of the municipal authorities involved. It does not require publication of notice, but merely that the viewers give "notice to parties interested as directed by the court"; and after report filed, that the court "may . . . require such notice to be given by the petitioners to the parties interested, as it deems proper." There is no provision for electoral vote.

In addition, the alteration of lines section provides that the court may alter the lines of a *township and* "any adjoining township, *borough or city* . . ." (Italics supplied). Yet, annexations by boroughs and cities are very fully covered by other statutes, and certainly as to them this section cannot be construed to allow such action as is attempted here.

Thus obviously the Legislature was quite familiar with annexation and the difference between actual annexation and the alteration of a township line. In

*Null v. Staiger,* 333 Pa. 370, 375, 4 A. 2d 883, the Supreme Court quoted from Endlich on the Interpretation of Statutes (sec. 258) : " 'It is obvious that the administration of justice requires something more than the mere application of the letter of the law, designed for some particular class of ordinary cases, to all others, however modified by accident or withdrawn by extraordinary circumstances from the spirit of its enactment. It follows that "general terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the Legislature intended exceptions to its language which would avoid results of this character. The reason of the law in such cases should prevail over its letter." ' "

This case is not ruled by *Exeter & Northumberland Townships,* 69 Pa. Superior Ct. 103. In that case this Court affirmed on the opinion of the court below, but the question involved was the ascertainment of the true line between the townships, which had been in dispute for years.

Beyond any question the instant proceedings were an attempt to make an annexation of a large part of a second class township to a first class township. We agree with the court below that a proceeding under the alteration of township lines section cannot serve as a substitute for an annexation. There can be no such annexation except by virtue of a statutory provision, —which does not exist.

The case of *In the Matter of Division Line of Clay, West Cocalico, and Ephrata Townships,* 33 Pa. 366 (hereinafter referred to as the *Clay* case), is cited as ruling the instant case under the doctrine of stare decisis. We have hereinbefore called attention to the fact that the Alteration of Lines Statute is not a sub-

stitute for annexation, and we also referred to the various annexation statutes.

Because the question of stare decisis should, with more propriety, be passed on by the Supreme Court rather than by us (*Cassell's Estate,* 334 Pa. 381, 384, 6 A. 2d 60), the instant case and its companion case of *Buffalo Township Lines Alteration Case,* 171 Pa. Superior Ct. 653, 92 A. 2d 246, will be certified to the Supreme Court after expressing our own opinion.

The *Clay* case was determined in 1859 and since then it has never been cited by either of our appellate courts, nor, as far as we can determine, by any lower court. There is thus no line of decisions such as usually exists where the doctrine of stare decisis is involved with reference to a decision of some age. There is therefore no long-established rule of law. In the *Clay* case the paper books, of course, are not available, but from the Reporter's prefatory statement it seems clear that our present question was not decided therein. In that case there were about 700 acres of land involved but only 15 voters affected. A petition was presented "for annexation." Under the Acts of March 14, and April 24, 1857, P. L. 93, 304, an annexation had to be submitted to the voters. The court below ruled that the two Acts of 1857 providing for a plebiscite were not applicable. On appeal the contestants raised but a single question, to wit, whether under the Acts of 1857 a plebiscite was required. No question was raised (such as in our instant cases) that the Alteration of Township Lines Statute of 1834 was inapplicable to the facts in the *Clay* case. The Supreme Court affirmed the lower court, holding that a concurring vote was not required. It is true that the Supreme Court said: "The present case is one of the alteration of lines, though called one of annexation, and it is to be decided by the

old law [the Act of 1834], for the new laws do not relate to it." To us it seems that this is obiter dictum and not judicial dictum, and its force is affected by the fact that the Legislature has enacted many laws concerning annexation ( cited in this opinion), and in no instance is there an act providing for an annexation such as this.

It seems highly improbable that the Legislature would provide various annexation statutes relating to townships if it intended that exactly the same thing could be effected under the Alteration of Township Lines Statute (The Second Class Township Code, 53 PS §19092-302). The doctrine contained in the dictum PS §19093-302, and The First Class Township Code, 53 of the *Clay* case seems to us to be outmoded by the various annexation statutes in Pennsylvania.

The order of the court below is affirmed.

The question involved is so "important as to make it expedient that the case should be decided by the Supreme Court," and, accordingly, this case is certified to the Supreme Court in conformity with the Act of June 24, 1895, P. L. 212, §10, 17 PS §197.

---

DISSENTING OPINION BY RHODES, P. J.:

I dissent from the conclusion reached by the majority in this case. The provisions of earlier acts similar to section 302 of The Second Class Township Code of May 1, 1933, P. L. 103, as amended, 53 PS §19093-302, have been construed as giving the courts of quarter sessions jurisdiction and power to grant the change of line (or annexation) sought by petitioners. *In the Matter of the Division Line of Clay, West Cocalico, and Ephrata Townships*, 33 Pa. 366. The *Clay* case, where about 700 acres of land were taken from two adjoin-

ing townships, and, in the words of the petition, "annexed" to a third adjoining township, cannot be distinguished on its facts from the present case. It was there said, page 367 of 33 Pa.: "The present case is one of the alteration of lines, though called one of annexation, and it is to be decided by the old law, for the new laws do not relate to it." I do not agree that this statement in the opinion of the Supreme Court is to be classified as obiter dictum. While the issue may not have been specifically raised, necessary to the decision—and therefore decided—was the question whether an "alteration" or "annexation" could be accomplished under the Act of April 15, 1834, P. L. 537, §13, which gave the courts of quarter sessions authority "to alter the lines of two or more adjoining townships, so as to suit the convenience of the inhabitants thereof." In this respect, the wording of the Act of 1834 was similar to the present Second Class Township Code. See Historical Note, 53 PS §19093-302.

Where the legislature has enacted a law which can be fairly interpreted as granting a remedy, the law should not be narrowly construed so as to render the remedy ineffective. In the *Clay* case, the Supreme Court construed the language of the Act as giving the courts of quarter sessions jurisdiction and authority to alter lines between townships, even though the proceeding was called "one of annexation," and involved 700 acres. I think it is obvious that any proceeding to alter lines between adjoining townships must involve "annexation." Any such alteration is a pro tanto annexation.

Where, in a later statute, the legislature uses language which has been the subject of prior interpretation, the presumption is that the language thus repeated is to receive like interpretation. *Lower Nazareth Township Supervisors' Appeal,* 341 Pa. 171, 175,

176, 19 A. 2d 92; *Rush v. Allegheny County,* 159 Pa. Superior Ct. 163, 165, 48 A. 2d 46; *Philadelphia J-L Corporation Liquor License Case,* 166 Pa. Superior Ct. 237, 239, 70 A. 2d 698; Statutory Construction Act of May 28, 1937, P. L. 1019, Article IV, §52 (4), 46 PS §552 (4). Although the present Second Class Township Code by the amendment of July 10, 1947, P. L. 1481, §3, 53 PS §19093-302, purports to authorize the alteration of the lines of an "adjoining . . . borough, or city . . .," which are covered by other legislation, this would not invalidate the portion of the Act which reenacts previous legislation relating to townships. The attempt to increase the jurisdiction of the court cannot be construed to abolish jurisdiction previously existing.

The fact that the legislature imposed certain requirements where the annexation involved boroughs, cities and first class townships, or first class townships (Act of June 19, 1939, P. L. 430, §1 et seq., 53 PS §19092-312.1; Act of May 13, 1937, P. L. 620, 53 PS §19092-311; cf. *Lerten Appeal,* 168 Pa. Superior Ct. 516, 79 A. 2d 670) does not mean that these more formal requirements apply to, or are to be found in, statutes relating to second class townships. The requirements of those acts do not negate the use of The Second Class Township Code to accomplish similar objectives. Second class townships are by definition less populous than other political subdivisions; and the courts of quarter sessions should properly have the power to alter township lines without the formalities applicable under other specific legislation to the more densely populated districts. The majority seems to overlook the principles that "there is nothing sacred about the delimitation of the political divisions of a state" (*In re: Annexation of Mill Creek Township, Erie County,* 74 Pa. Superior Ct. 275, 278), and that the legislature may prescribe the methods for change.

Under the established practice and procedure in this type of case, the court of quarter sessions gives notice to all interested parties. The statute gives the court power to alter the lines of the townships involved "to suit the convenience of the inhabitants thereof." The proceeding here being under the authority and jurisdiction of the court of quarter sessions, if the "alteration" or "annexation" involved is substantial, or affects much land or many people, the court has the power and means of providing for the protection of their interests. The majority opinion does not attempt to indicate when "alteration" becomes "annexation." Such an attempt would be futile and would ignore a realistic approach to the legislative declaration that an alteration of township lines may be made "so as to suit the convenience of the inhabitants thereof." The majority opinion leaves the petitioners wholly without remedy. In any event, such a conclusion is to be avoided, and especially where the Supreme Court's interpretation of earlier legislation similar to the present Act did afford a remedy.

When the legislature reenacted the Act of 1834 in the form of the present law, it had before it the decision in the *Clay* case. If it had intended to impose more stringent requirements where second class townships are involved it could have done so. In the absence of such a legislative change in the present Act, we should accept the clear pronouncement of the Supreme Court and give an effective remedy in the present and similar cases involving second class townships.

I am of the opinion that the present case does not come within the provisions of the Act of June 24, 1895, P. L. 212, §10, 17 PS §197, justifying certification to the Supreme Court.

DITHRICH and ROSS, JJ., join in this dissent.