415 A.2d 47

COMMONWEALTH of Pennsylvania, Appellant,

v.

Michael BONADIO, Patrick Gagliano, Shane Wimbel, and Dawn Delight a/k/a Mildred I. Kannitz, Appellees.

Supreme Court of Pennsylvania.

Argued March 7, 1980.

Decided May 30, 1980.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Deputy Dist. Atty., Charles W. Johns, Asst. Dist. Atty., Pittsburgh, for appellant.

Carl Max Janavitz, Janavitz, Janavitz & Kanfoush, Rochelle D. Friedman, Pittsburgh, for appellees.

Welsh S. White, Pittsburgh, for National Committee, Sexual Civil Liberties Union.

Patricia G. Miller, Pittsburgh, for amicus curiae American Civil Liberties Union of Pa.

Donald J. Martin, Norristown, for Eromin Center, Inc.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

 This is an appeal from an Order of the Court of Common Pleas of Allegheny County granting appellees' Motion to Quash an Information on the ground that the Voluntary Deviate Sexual Intercourse Statute[1] is unconsti-

---

1. The relevant portions of the statute are the following:

 "A person who engages in deviate sexual intercourse under circumstances not covered by section 3123 of this title (related to involuntary deviate sexual intercourse) is guilty of a misdemeanor of the second degree." Act of December 6, 1972, P.L.1482, No. 334 § 1, 18 Pa.C.S.A. § 3124 (1973).

tutional.[2] Appellees were arrested at an "adult" porno-

"'Deviate sexual intercourse.' Sexual intercourse per os or per anus between human beings who are not husband and wife, and any form of sexual intercourse with an animal." Act of December 6, 1972, P.L.1482, No. 334, § 1, 18 Pa.C.S.A. § 3101 (1973).

**2.** With regard to the procedural standing of this case and the manner in which the constitutional issues have come before the Court, we note that appellees' brief states:

"Appellees constitutional attack is restricted to the facial invalidity of the statutes. Since the present appeal arises from the granting of a Motion to Quash Indictments, brought to the court's attention via an Omnibus Pre-Trial Motion, no decision by the lower court was made as to whether or not the statutes *as applied* to the Appellees were constitutional. The statutes were determined by the lower court to be unconstitutional on their face alone and accordingly no testimony was taken."

Appellant's reply brief, in reference to, inter alia, the right of privacy and equal protection arguments of appellees, states:

"[T]he Commonwealth is not challenging appellees' standing to raise the constitutional issues in the manner which has been asserted."

However, the Commonwealth argues that the case should be remanded for development of a full record of the factual setting of the case rather than proceed to a decision in reliance on the outline of facts set forth in the criminal complaints and informations. We believe, however, that the factual setting is uncomplicated and clearly enough set forth in such documents as to warrant consideration of the governing constitutional issue without need for remand.

Mere consent of the Commonwealth, however, would not make appropriate a form of constitutional attack where such a challenge "on the face" as opposed to "as applied" would not otherwise be in accord with recognized principles determining standing. The question of the constitutionality of a statute cannot generally be determined abstractly but rather is to be determined only as it applies and is sought to be enforced in a particular case before the court, since the power to repeal a statute is not judicial in character; and, furthermore, one who is unharmed by a particular feature of a statute will not be heard to complain of its alleged unconstitutionality. *Knowles's Estate*, 295 Pa. 571, 145 A. 797 (1929).

Appellees termed their challenge as "on the face" only in the sense that they have not gone to trial for violation of the statute: enforcement, however, has been undertaken against them and for this reason they have standing to raise, at minimum, the assertion that the statute impermissibly discriminates against unmarried persons, a class of which appellees are members else the statute would have no application to them whatsoever. We do not need to determine, therefore, whether appellees have standing to raise other asserted constitutional issues including, inter alia, the right of privacy, since we base our decision solely upon equal protection grounds.

graphic theater on charges of voluntary deviate sexual intercourse and/or conspiracy to perform the same.

■ The Commonwealth's position is that the statute in question is a valid exercise of the police power pursuant the authority of states to regulate public health, safety, welfare, and morals. Yet, the police power is not unlimited, as was stated by the United States Supreme Court in *Lawton v. Steele,* 152 U.S. 133, 137, 14 S.Ct. 499, 501, 38 L.Ed. 385 (1894).

"To justify the State in thus interposing its authority in behalf of the public, it must appear, first, that the *interests of the public generally,* as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and *not unduly oppressive upon individuals.*" (Emphasis added.)

■ The threshold question in determining whether the statute in question is a valid exercise of the police power is to decide whether it benefits the public generally. The state clearly has a proper role to perform in protecting the public from inadvertent offensive displays of sexual behavior, in preventing people from being forced against their will to submit to sexual contact, in protecting minors from being sexually used by adults, and in eliminating cruelty to animals. To assure these protections, a broad range of criminal statutes constitute valid police power exercises, including proscriptions of indecent exposure, open lewdness, rape, *involuntary* deviate sexual intercourse, indecent assault, statutory rape, corruption of minors, and cruelty to animals. The statute in question serves none of the foregoing purposes and it is nugatory to suggest that it promotes a state interest in the institution of marriage. The Voluntary Deviate Sexual Intercourse Statute has only one possible purpose: to regulate the private conduct of consenting adults. Such a purpose, we believe, exceeds the valid bounds of the police power while infringing the right to equal protection of the laws guaranteed by the Constitution of the United States and of this Commonwealth.

With respect to regulation of morals, the police power should properly be exercised to protect each individual's right to be free from interference in defining and pursuing his own morality but not to enforce a majority morality on persons whose conduct *does not harm others.* "No harm to the secular interests of the community is involved in atypical sex practice in private between consenting adult partners." MODEL PENAL CODE § 207.5—Sodomy & Related Offenses. Comment (Tent. Draft No. 4, 1955). Many issues that are considered to be matters of morals are subject to debate, and no sufficient state interest justifies legislation of norms simply because a particular belief is followed by a number of people, or even a majority. Indeed, what is considered to be "moral" changes with the times and is dependent upon societal background. Spiritual leadership, not the government, has the responsibility for striving to improve the morality of individuals. Enactment of the Voluntary Deviate Sexual Intercourse Statute, despite the fact that it provides punishment for what many believe to be abhorrent crimes against nature and perceived sins against God, is not properly in the realm of the temporal police power.

The concepts underlying our view of the police power in the case before us were once summarized as follows by the great philosopher, John Stuart Mill, in his eminent and apposite work, ON LIBERTY (1859):

[T]he sole end for which mankind are warranted, individually or collectively, in interfering with the liberty of action of any of their number, is self-protection . . . [T]he only purpose for which power can be rightfully exercised over any member of a civilised community, against his will, is to prevent harm to others. His own good, either physical or moral is not a sufficient warrant. He cannot rightfully be compelled to do or forbear because it will be better for him to do so, because it will make him happier, because, in the opinions of others, to do do would be wise, or even right. These are good reasons for remonstrating with him, or reasoning with him, or persuading him, or

entreating him, but not for compelling him, or visiting him with any evil in case he do otherwise. To justify that, the conduct from which it is desired to deter him must be calculated to produce evil to some one else. *The only part of the conduct of any one, for which he is amenable to society, is that which concerns others. In the part which merely concerns himself, his independence is, of right, absolute. Over himself, over his own body and mind, the individual is sovereign.*

It is, perhaps, hardly necessary to say that this doctrine is meant to apply to human beings in the maturity of their faculties . . .

But there is a sphere of action in which society as distinguished from the individual, has, if any, only an indirect interest; comprehending all that portion of a person's life and conduct which affects only himself, or if it also affects others, only with their free, voluntary, and undeceived consent and participation . . .

This, then, is the appropriate region of human liberty. It comprises, first, the inward domain of consciousness; demanding liberty of conscience, in the most comprehensive sense; liberty of thought and feeling; absolute freedom of opinion and sentiment on all subjects, practical or speculative, scientific, *moral, or theological* . . . Secondly, the principle requires liberty of tastes and pursuits; of framing the plan of our life to suit our own character; of doing as we like, subject to such consequences as may follow: without impediment from our fellow-creatures, *so long as what we do does not harm them, even though they should think our conduct foolish, perverse, or wrong.* Thirdly, from this liberty of each individual, follows the liberty, within the same limits of combination among individuals; freedom to unite, for any purpose not involving harm to others: the persons combining being supposed to be of full age, and not forced or deceived.

No society in which these liberties are not, on the whole, respected, is free, whatever may be its form of govern-

ment; . . . *The only freedom which deserves the name, is that of pursuing our own good in our own way, so long as we do not attempt to deprive others of theirs,* or impede their efforts to obtain it. Each is the proper guardian of his own health, whether bodily, or mental or spiritual. Mankind are greater gainers by suffering each other to live as seems good to themselves, than by compelling each to live as seems good to the rest. (Emphasis Supplied)

This philosophy, as applied to the issue of regulation of sexual morality presently before the Court, or employed to delimit the police power generally, properly circumscribes state power over the individual.

Not only does the statute in question exceed the proper bounds of the police power, but, in addition, it offends the Constitution by creating a classification based on marital status (making deviate acts criminal only when performed between unmarried persons) where such differential treatment is not supported by a sufficient state interest and thereby denies equal protection of the laws. Assuming, without deciding, that no fundamental interest is at stake (i. e., the right of privacy), so that strict scrutiny of the classification is not required, the classification still denies equal protection under the following standard:

The Equal Protection Clause of [the state and federal] constitutions does not deny the State the power to treat different classes of persons in different ways, but does deny the right to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of the particular statute. The classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation so that all persons similarly circumstanced shall be treated alike.

*Moyer v. Phillips,* 462 Pa. 395, 400–401, 341 A.2d 441, 443 (1975).

The Commonwealth submits that the classification is justified on the ground that the legislature intended to forbid, generally, voluntary "deviate" sexual intercourse, but created an exception for persons whose exclusion is claimed to further a state interest in promoting the privacy inherent in the marital relationship. We do not find such a justification for the classification to be reasonable or to have a fair and substantial relation to the object of the legislation. Viewing the statute as exceeding the proper bounds of the police power, however, since none of the previously discussed valid legislative interests in regulating sexual conduct are promoted by the statute, the classification itself could not bear a substantial relation to a valid legislative objective. Furthermore, even if the subject of the statute's regulation were properly within the police power, the marital status of voluntarily participating adults would bear no rational relationship to whether a sexual act should be legal or criminal. In *Eisenstadt v. Baird*, 405 U.S. 438, 453, 92 S.Ct. 1029, 1038, 31 L.Ed.2d 349 (1972) the Supreme Court of the United States stated: "[T]he State could not, consistently with the Equal Protection Clause, outlaw distribution [of contraceptives] to unmarried but not to married persons. In each case the evil, as perceived by the State, would be identical, and the underinclusion would be invidious." Similarly, to suggest that deviate acts are heinous if performed by unmarried persons but acceptable when done by married persons lacks even a rational basis, for requiring less moral behavior of married persons than is expected of unmarried persons is without basis in logic. If the statute regulated sexual acts so affecting others that proscription by law would be justified, then they should be proscribed for all people, not just the unmarried.

Order affirmed.

EAGEN, C. J., filed a concurring opinion in which LARSEN and KAUFFMAN, JJ., join.

LARSEN, J., filed a concurring opinion.

ROBERTS, J., filed a dissenting opinion in which O'BRIEN, J., joins.

NIX, J., filed a dissenting opinion.

EAGEN, Chief Justice, concurring.

I am convinced the statute violates the constitutional right of equal protection and for this reason I concur in the result reached by Mr. Justice Flaherty.

LARSEN and KAUFFMAN, JJ., join in this opinion.

LARSEN, Justice, concurring.

I join Mr. Chief Justice Eagen's concurring opinion. Additionally, I would like to point out that *all* public sexual intercourse should be illegal, not just those public sex acts entered into by single persons.

ROBERTS, Justice, dissenting.

The record plainly demonstrates that these appellants engaged in the proscribed conduct on a stage before a public audience and in plain view of the arresting officers. Thus there is no basis, constitutional or otherwise, for the majority's hasty invalidation of our Legislature's Crimes Code. Accordingly, I would reverse the order of the Court of Common Pleas of Allegheny County and allow the prosecution to proceed.

O'BRIEN, J., joins in this dissenting opinion.

NIX, Justice, dissenting.

The majority tries to justify its novel and shocking ruling by suggesting that they are defending the individual from state intervention on questions of morality and personal conscience. Regrettably this theory ignores the facts of the case before the court.[1] This is not a case of private, intimate conduct between consenting adults.

---

1. A facial analysis is clearly inappropriate in this instance. Such an approach has only been judicially sanctioned in response to first amendment claims.

Appellees, Mildred Kannitz, known on the stage as "Dawn Delight" and Shanne Wimbel are "exotic" dancers. Appellees, Patrick Gagliano and Michael Bonadio are employees of the Penthouse Theater in downtown Pittsburgh, in which Ms. Delight and Ms. Wimbel perform. In March of last year, plainclothes police officers went to the Penthouse Theater, paid an admission fee, entered the theater, and viewed the performances of Ms. Delight and Ms. Wimbel. During the course of these performances Ms. Delight and Ms. Wimbel engaged in sexual acts with members of the audience. The police officers arrested the two performers, the patrons who participated in the sexual acts, as well as the theater's cashier, Bonadio, and the theater's manager, Gagliano. Ms. Delight and Ms. Wimbel were each charged by information with one count each of voluntary deviate sexual intercourse pursuant to 18 Pa.C.S.A. § 3124. Messrs. Bonadio and Gagliano were charged with one count each of criminal conspiracy.

The majority attempts to avoid the privacy issue[2] by reasoning that there was not a valid exercise of the state's police power in the prohibition of this type of conduct. The absurdity of such a position does not require demonstration. Here we have a public display of the most depraved type of sexual behavior for pay. Any member of the public who pays the fee can witness and participate in this conduct. That the majority would suggest that this is beyond the state's power to regulate public health, safety, welfare, and morals is incredible. I assume that regulation of prostitution and hard core pornography are also now prohibited by todays ruling.

Finally, the majority's conclusion that the statute violates equal protection presents a "red herring." Concern over the marital exception contained within the voluntary deviate sexual intercourse statute, is misplaced, for the heart of this

2. The court below declared the statute constitutionally infirm as an invasion of privacy. The assertion of a privacy right, however, is completely out of place in light of the present factual predicate. Arguments regarding *private* sexual conduct are totally irrelevant in the instant appeal, where the sexual activity involved was *public.*

exception is the intimacy and warmth of a *private* marital sexual relationship. Here the sexual acts were performed in *public* and in return for monetary compensation. It is therefore clear that the marital status of the participants in this conduct would not have affected their culpability. To suggest that the marital exception was intended to insulate a marital couple who performed deviate sexual acts for ·public display for pay would distort the obvious legislative objective in providing for this exception. The marital exception was designed to protect the intimacy and privacy of the marital unit. It did not give married couples the license to publicly engage in lewd and lascivious public acts.