COMMONWEALTH of Pennsylvania, Appellant,

v.

Orlando HINDS, Appellee.

Superior Court of Pennsylvania.

Argued Dec. 15, 2000.
Filed April 25, 2001.

**860**

Heather Adams, Asst. Dist. Atty., York, for Com., appellant.

John H. Arnold, York, for appellee.

Before McEWEN, P.J., DEL SOLE, KELLY, POPOVICH, JOHNSON, JOYCE, MUSMANNO, ORIE MELVIN, and LALLY–GREEN, JJ.

JOYCE, J.:

¶ 1 The Commonwealth appeals from the judgment of sentence entered following Appellee's convictions for two counts of possession of a controlled substance with the intent to deliver (PWID),[1] two counts of criminal conspiracy,[2] and one count of prohibitive offensive weapons.[3] For the reasons set forth below, we vacate and remand for resentencing.[4] The relevant facts and procedural history of this case are as follows.

¶ 2 On December 21, 1998, the police executed a search warrant at the apartment occupied by Appellee and his girlfriend, Lena Fa Glenn, which was located at the rear of the building on the second floor.[5] Pursuant to their search, the police seized 5.97 grams of crack cocaine, four Ziploc packets containing 3.1 grams of marijuana, various drug packaging paraphernalia and two guns which had sawed off barrels.

¶ 3 Following the May 6–7, 1999 jury trial, Appellee was convicted of the above named offenses. Subsequently, the Commonwealth filed notices pursuant to 18 Pa. C.S.A. § 7508, § 6314 and 6317, seeking the prescribed mandatory sentences. On June 23, 1999, the court sentenced Appellee to an aggregate of five (5) to ten (10) years' imprisonment. This sentence included the mandatory period required under 18 Pa.C.S.A. § 7508. However, the court rejected mandatory sentences under both sections 6314 and 6317. The Commonwealth timely appealed.

¶ 4 The sole issue raised for our review is whether the trial court erred in failing to apply the mandatory two (2) year sentence pursuant to 18 Pa.C.S.A. § 6317.[6] In relevant part, the statute states:

**Drug–Free School Zones.**

(a) **General rule.**—A person 18 years of age or older who is convicted in any court of this Commonwealth of a violation of section 13(a)(14) or

---

1. 35 P.S. § 780–113(a)(30).

2. 18 Pa.C.S.A. § 903.

3. 18 Pa.C.S.A. § 908(a).

4. Our decision today is consistent with our holding in the companion case of *Commonwealth v. Drummond,* 775 A.2d 849 (*en banc* circulating opinion, vote date February 26, 2001).

5. Lena Fa Glenn was charged separately with various offenses related to this search.

6. The Commonwealth does not raise an issue regarding the application of section 6314. Therefore, we make no further determination.

(30) of the act of April 14, 1972 (P.L. 233, No. 64 [35 P.S. § 780–113(a)(14) or (30) ]) known as The Controlled Substance, Drug, Device and Cosmetic Act, shall, if the delivery or possession with intent to deliver of the controlled substance occurred within 1,000 feet of the real property on which is located a public, private or parochial school or a college or university or within 250 feet of the real property on which is located a recreation center or playground or on a school bus, be sentenced to a minimum sentence of at least two years of total confinement, notwithstanding any other provision of this title, The Controlled Substance, Drug, Device and Cosmetic Act or other statute to the contrary. The maximum term of imprisonment shall be four years for any offense:

(1) subject to this section; and

(2) for which The Controlled Substance, Drug, Device and Cosmetic Act provides for a maximum term of imprisonment of less than four years.

If the sentencing court finds that the delivery or possession with intent to deliver was to an individual under 18 years of age, then this section shall not be applicable and the offense shall be subject to section 6314 (relating to sentencing and penalties for trafficking drugs to minors).

18 Pa.C.S.A. § 6317(a).

¶ 5 Appellee stipulated to the fact that his apartment was located within 1,000 feet from both Christ Lutheran School and St Mary's School. Despite this stipulation, however, the court determined that the provision did not apply based on the holding in *Commonwealth v. Wilson*, 737 A.2d 1281 (Pa.Super.1999) (unpublished memorandum). The Court in *Wilson, supra*, however, did not discuss the applicability of section 6317, as only the applicability of section 6314 (Sentencing and penalties for trafficking drugs to minors) was at issue. Appellee claims that although section 6317 was not discussed, the implication is that the same analysis should apply where section 6317 is merely an amendment of section 6314. Therefore, Appellee claims that for section 6317 to apply, the offense must necessarily involve a minor. We disagree.

■ ¶ 6 This Court has previously considered the rules of statutory construction and analyzed the legislative intent in enacting this statute when discussing the applicability of this sentencing provision with regards to a playground. The same considerations apply to the decision which we render in this case, therefore, we will restate this Court's prior findings for purposes of our discussion. Relevantly, this Court has stated:

In construing the enactments of the legislature, appellate courts must refer to the provisions of the Statutory Construction Act. In determining the meaning of a statute, we are obliged to consider the intent of the legislature and give effect to that intention. Courts may disregard the statutory construction rules only when the application of such rules would result in a construction inconsistent with the manifest intent of the General Assembly. The General Assembly, in clarifying the proper approach to be used in the determination of legislative intent, stipulated that:

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregard-

ed under the pretext of pursuing its spirit.

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

   (1) The occasion and necessity for the statute.

   (2) The circumstances under which it was enacted.

   (3) The mischief to be remedied.

   (4) The object to be attained.

   (5) The former law, if any, including other statutes upon the same or similar subjects.

   (6) The consequences of a particular interpretation.

   (7) The contemporaneous legislative history.

   (8) Legislative and administrative interpretations of such statute.

We are to give the words of a statute their plain and ordinary meaning. We are required to construe words of a statute ... according to their common and accepted usage. Words of a statute are to be considered in their grammatical context. Furthermore, we may not add provisions that the General Assembly has omitted unless the phrase is necessary to the construction of the statute. Moreover, the Pennsylvania Supreme Court held that when interpreting a statute, presumably every word, sentence or provision therein is intended for some purpose, and accordingly must be given effect. . . .

*Commonwealth v. Campbell,* 758 A.2d 1231, 1233–1234 (Pa.Super.2000) (citations and quotation marks omitted). With regards to interpreting this particular statute, this Court stated as follows:

   Prior to the enactment of section 6317, "Youth/School Enhancement" was the ti-

tle of the previously controlling enhancement provision, which only applied to areas "within 1000 feet of a public or private elementary or secondary school." It is our interpretation that the General Assembly regarded this statute as insufficient and, therefore, enacted 18 Pa. C.S.A. § 6317 to rectify those insufficiencies. By enacting section 6317 in place of its predecessor, the Pennsylvania General Assembly not only intended to protect our children from the evils of illegal drug dealing on school grounds and on school buses, but additionally intended to protect our children from those same evils on or near their playgrounds and recreation centers, whether associated with municipal facilities, school property or, as in this present case, semiprivate apartment complexes. . . .

It is our finding that the General Assembly's goal and purpose [in enacting this statute] was to protect the children of our communities from the ravages and evils of the illegal drug trade that pervades our country. Through the enactment of section 6317, it attempted to fortify the barrier that segregates the places where our children frequent from the illegal drug scene. A strict reading of the statute exemplifies the General Assembly's intent. The statute protects our children **"within 1000 feet of the real property on which is located a public, private or parochial school or a college or a university."** Furthermore, it protects our children on their way to and from school on their school bus. Finally, it protects our children in the places where they routinely play. The General Assembly did not choose to limit this protection solely to school play areas or municipal facilities, but chose to reinforce the purpose of the statute by including all areas within 250 feet of the

real property on which is located a recreation center or playground.

*Id.* at 1236–1237 (citations and quotation marks omitted) (emphasis original).

¶ 7 Applying the rules of statutory construction and adopting this Court's prior interpretation of the legislative intent in enacting this statute, we must conclude the trial court erred in failing to apply the provisions of section 6317 under the facts of this case. In finding that the legislative intent of the statute is to protect the children of our communities from the harms attendant to the drug trade, we must necessarily determine that such harms are present when the individual merely resides within the mandatory 1,000 feet vicinity of a school, even when the drugs are not necessarily accessible to children. To hold otherwise would emasculate the meaning of "Drug Free School Zone." We cannot interpret the word, "zone," to exclude a residence which is clearly within the zone but not readily accessible by school age children. As discussed earlier, the statute is intended to curtail not only drug transactions involving children, but also to protect young children from all illegal activity which is necessarily attendant with the drug trade. The statute clearly does not require anything more than the actor delivering or possessing drugs within the requisite distance from the school. Contrary to Appellee's argument, we refuse to further require that a minor be involved in the offense.

■ ¶ 8 Our findings today are consistent with the findings of another jurisdiction on a related matter. When deciding the constitutionality of a similar statute in Maryland, the Court of Appeals of that state determined that the sentencing provision applied regardless of the presence or absence of children in the area at the relevant time. *Dawson v. State of Maryland,* 329 Md. 275, 619 A.2d 111 (1993). Implicit in that court's findings is that whether or not the drugs are in fact accessible to children is irrelevant. Rather, it is protecting the children from all the attendant harms of the drug trade which is of paramount concern.[7] Therefore, the fact that no children were present is of no consequence. Appellee's argument to the contrary must fail. Therefore, we are constrained to reverse and remand the findings of the trial court.

¶ 9 Judgment of sentence vacated. Case remanded for resentencing in light of the applicability of the sentencing provisions under 18 Pa.C.S.A. § 6317. Jurisdiction relinquished.

¶ 10 JOHNSON, J., files Dissenting Opinion in which McEWEN, P.J. and DEL SOLE, J., join.

¶ 11 MUSMANNO, J., files Dissenting Opinion in which DEL SOLE, J., join.

¶ 12 DEL SOLE, J., files Dissenting Statement in which MUSMANNO, J., joins.

JOHNSON, J.:

¶ 1 I join the dissent of the Honorable John Musmanno. The Majority would apply the enhancement under section 6317(a) to all defendants, including Orlando Hinds, who possess illegal drugs in a school zone so long as they intend to distribute the drugs *anywhere.* This interpretation does

---

7. We note further that 18 Pa.C.S.A. § 6314 (Sentencing and penalties for trafficking drugs to minors) applies when the sale is actually to a minor. The existence of this section, along with the reference to its applicability in § 6317, further supports our findings that accessibility to the drugs by the minors is not a factor detrimental to the application of the provisions of section 6317. Rather, a separate provision exists to address that offense.

not effectuate the legislature's intent, and consequently, causes the law as applied to exceed the permissible scope of legislative authority. Enhancement of sentences for possession with intent to deliver cannot serve the objective of the statute to prevent drug dealing *inside* a school zone where the intended point of delivery is *outside* the zone. I would find, accordingly, that the sentencing enhancement does not bear a real and substantial relationship to the statutory objective of section 6317 unless the Commonwealth proves at sentencing that the defendant intended distribution inside the zone. I would limit section 6317 accordingly and would affirm the decision of the trial court not to apply the sentence enhancement on the facts of this case. I write separately to discuss the proper limits of section 6317 and to explain my conviction that the Majority's broad interpretation of that section places it beyond the permissible scope of the Commonwealth's police power.

¶ 2 The police power is the substantive authority of the state to regulate private rights in the public interest. *See Dranzo v. Winterhalter*, 395 Pa.Super. 578, 577 A.2d 1349, 1355 (1990). Such power enables the state to enact legislation to protect the health, welfare, and safety of its citizens and to provide for the punishment, treatment and rehabilitation of those who commit acts inimical to the interest of the citizenry at large. *See Commonwealth v. Bonadio*, 490 Pa. 91, 415 A.2d 47, 49 (1980). While thus broad in scope, the police power is finite, circumscribed by the mandate of substantive due process and subject to judicial review and restraint. *See Dranzo*, 577 A.2d at 1355. Although "regulation under a proper exercise of the police power is due process," regulation the effect of which extends beyond the legislative objective sought violates due process. *See Balent v. City of Wilkes–Barre*, 542 Pa. 555, 669 A.2d 309, 314–15

(1995). *See also Commonwealth v. Sterlace*, 24 Pa.Cmwlth. 62, 354 A.2d 27, 29 (1976) (admonishing that "even legitimate legislative goals cannot be pursued by means which stifle fundamental personal liberty when the goals can be otherwise more reasonably achieved").

¶ 3 Accordingly, "[a] law that purports to be an exercise of the police power must not be arbitrary, unreasonable or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relationship to the object sought to be attained." *Dranzo*, 577 A.2d at 1355. *See also Gambone v. Commonwealth*, 375 Pa. 547, 101 A.2d 634, 637 (1954) (stating that law must not be "unreasonable, unduly oppressive or patently beyond the necessities of the case"). Thus, where provisions of a statute, when applied, impose restraints on individual liberty that do not bear a "real and substantial relationship" to the policy objective the legislature sought to achieve by way of the statute, those provisions are infirm. *See Bonadio*, 415 A.2d at 49. Even a legitimate legislative end does not justify any means, but only such limited means as produce the potential benefit envisioned by the statute. *See Frantz v. Com. Dept. of Transp.*, 168 Pa.Cmwlth. 35, 649 A.2d 148, 151 (1994) (concluding that sentencing statute providing for restriction of driver's license upon conviction of underage drinking was valid exercise of police power based on realization of intended benefit to decrease alcohol-related accidents among sixteen to twenty-year olds).

¶ 4 Where application of a statute places at issue the relationship of means employed to end to be achieved, our courts bear an affirmative duty to assure that the intended benefit is served by the means at issue. *See Balent*, 669 A.2d at 315.

The question whether any particular statutory provision is so related to the public good and so reasonable in the means it prescribes as to justify the exercise of the police power, is one for the judgment, in the first instance, of the law-making branch of the government, *but its final determination is for the courts.*

*Gambone,* 375 Pa. 547, 101 A.2d 634, 637 (1954) (emphasis added). "If there is doubt as to whether the statute is enacted for a legitimate police objective, or *if, conceding the statute's purpose, its exercise goes too far, then the judiciary has a duty to declare the given exercise of the police power invalid.*" *Balent,* 669 A.2d at 315 (emphasis added). In view of so clear a mandate, I cannot accept the Majority's validation of the untoward consequences engendered by application of section 6317 merely on the basis of the "plain language" of the statute. *See also* 1 Pa.C.S. § 1922(1) (mandating presumption that General Assembly does not intend a result that is absurd, impossible of execution or unreasonable); *Petition for Alteration of Lines of Indiana and Shaler Twps.,* 171 Pa.Super. 642, 92 A.2d 241, 243 (1952) (quoting *Null v. Staiger,* 333 Pa. 370, 4 A.2d 883, 885 (1939)) ("It is obvious that the administration of justice requires something more than the mere application of the letter of the law, designed for some particular class of ordinary cases, to all others, however modified by accident or withdrawn by extraordinary circumstances from the spirit of its enactment. It follows that general terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the Legislature intended exceptions to its language which would avoid results of this character.").

¶ 5 The statute at issue, entitled "Drug Free School Zones," 18 Pa.C.S. § 6317, is a sentencing measure that establishes minimum terms of incarceration for certain drug-related offenses when committed within a defined distance of schools and other places frequented by children. *See Commonwealth v. Campbell,* 758 A.2d 1231, 1233–34 (Pa.Super.2000). Where the offense of which a defendant is convicted carries a sentence less than the minimum term mandated by section 6317(a)(2), the statute operates as a sentence enhancement. Subsection (a), pursuant to which the Majority would remand Orlando Hinds's case for imposition of a longer sentence, provides as follows:

**§ 6317. Drug-free school zones**

**(a) General rule.**—A person 18 years of age or older who is convicted in any court of this Commonwealth of a violation of section 13(a)(14) [ (prescription by practitioner "off-license") ] or (30) [ (possession by non-practitioner with intent to deliver) ] of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, shall, if the delivery or possession with intent to deliver of the controlled substance occurred within 1,000 feet of the real property on which is located a public, private or parochial school or a college or university or within 250 feet of the real property on which is located a recreation center or playground or on a school bus, be sentenced to a minimum sentence of at least two years of total confinement, notwithstanding any other provision of this title, The Controlled Substance, Drug, Device and Cosmetic Act or other statute to the contrary. The maximum term of imprisonment shall be four years for any offense:

(1) subject to this section; and

(2) for which The Controlled Substance, Drug, Device and Cosmetic Act pro-

vides for a maximum term of imprisonment of less than four years.

If the sentencing court finds that the delivery or possession with intent to deliver was to an individual under 18 years of age, then this section shall not be applicable and the offense shall be subject to section 6314 (relating to sentencing and penalties for trafficking drugs to minors).

18 Pa.C.S.A. § 6317(a) (footnote omitted).

¶ 6 This Court has reviewed this provision and concluded that the legislature's objective in its passage was "not only ... to protect our children from the evils of illegal drug dealing on school grounds and on school buses, but additionally intended to protect our children from those same evils on or near our playgrounds and recreation centers." Majority Opinion at 5 (quoting *Campbell*, 758 A.2d at 1233). In *Campbell*, we elaborated that:

the General Assembly's goal and purpose was to protect the children of our communities from the ravages and evils of the illegal drug trade that pervades our country. Through the enactment of section 6317, it attempted to fortify the barrier that segregates the places where our children frequent from the illegal drug scene.

*Campbell*, 758 A.2d at 1237.

¶ 7 Such an objective is laudable and well within the permissible scope of the Commonwealth's police power if applied within the framework stated by the law's sponsor. *See id.* (quoting Legislative Journal—House, June 3, 1997, at 1162). *See also Commonwealth v. Bonadio*, 490 Pa. 91, 415 A.2d 47, 49 (1980) (recognizing penal and sentencing legislation designed to protect the public from identified crimes within the permissible scope of the police power). As we recognized in *Campbell*, Representative Charles Dent ((R) Lehigh)

focused the enhancement on conduct that occurred within school zones:

My amendment, A2268, simply puts teeth into Pennsylvania's existing Drug–Free–School–Zone–Act. Essentially, any sale that occurs *within the drug-free zone,* whether the sale is to a minor or a person over the age of 18, would be prosecuted with the two-year mandatory sentencing provision.

*Id.,* 758 A.2d at 1237 (emphasis added; emphasis in *Campbell* omitted) (quoting Legislative Journal—House, June 3, 1997, at 1162).

¶ 8 Were the Majority to focus the enhancement similarly, allowing its application only where a defendant convicted under 35 P.S. § 780–113(a)(30) (possession with intent to deliver) was found to have intended delivery inside the school zone, the provision would, ostensibly, remain within the ambit of the Commonwealth's police power. Because the Majority has not applied such a limit, I am compelled to assert that *"conceding the statute's purpose, its exercise goes too far." Balent,* 669 A.2d at 315 (emphasis added). I recognize that the legislature intended the enhancement under section 6317(a) to effectuate a "barrier," *see Campbell,* 758 A.2d at 1237, protecting school-age children from illegal drug dealing in the areas "where [those] children frequent," *id.* at 1233. However, the enhancement does not bear a "real and substantial" relationship to the protection of those children if the intended point of distribution for the controlled substances the defendant possessed is not "where [ ] children frequent" as defined by the statute. The "barrier" that section 6317 erects and seeks to enforce by means of the enhancement, is located within 1000 feet around schools and 250 feet around playgrounds and recreation centers. Application of the enhancement without a demonstration from the Com-

monwealth that the defendant intended distribution of drugs inside that area, deprives the enhancement of a "real and substantial relationship" to the statutory objective. Stated concretely, if the legislature were to erect a wall 1000 feet from every school in the Commonwealth to protect school children from the drug trade, a defendant living within the wall who intended to sell drugs would threaten children inside the wall *only if he intended to make his sales inside the wall.* Clearly then, the Commonwealth must prove a defendant's intent to sell drugs *inside* the drug-free school zone for the offense of Possession with Intent to Deliver to remain within the purview of the sentence enhancement. In sum, the means of the statute as the Majority would apply them are not matched to the objective the statute seeks. Unless application of those means, i.e. the enhancement, is constrained to distribution of controlled substances *intended within the drug-free zone,* those means bear *no* relationship to the objective of the statute. Because the benefit to children is the sole object of section 6317, and because the means of the statute do not bear a "real and substantial" relationship to that object unless limited to delivery of controlled substances intended within the school zone, the statute as interpreted by the Majority is infirm.

¶ 9 The case before us is a showpiece of that infirmity. As Judge Musmanno has observed, the Commonwealth introduced no evidence, either at trial or at the sentencing hearing, to establish that Orlando Hinds intended distribution of the substances he possessed inside the drug-free school zone. Thus, Hinds's sentence will be assessed in response to circumstantial evidence that, while present in the drug-free school zone, he formed an intent to deliver controlled substances *somewhere.* I fail to see how such an intent, without proof that the Hinds intended further to

act within the zone, establishes a basis for sentence enhancement under section 6317. Ultimately, Hinds's sentence fails to advance the objective of the statute and incarcerates the defendant for a period longer than provided for his substantive offense with no consideration of the limits and demands of due process on the police power of the Commonwealth. Accordingly, I dissent. I would affirm the decision of the trial court not to apply the sentence enhancement on the facts of this case.

¶ 10 McEWEN, P.J., and DEL SOLE, J., join this Dissenting Opinion.

MUSMANNO, J.:

¶ 1 While I joined the Opinion of our Court in the companion case of *Commonwealth v. Drummond,* 775 A.2d 849 (Pa.Super. 2001) (*en banc*), I am constrained to dissent to this Court's interpretation of 18 Pa.C.S.A. § 6317 in the instant case.

¶ 2 For the sentencing provisions of section 6317 to apply, the Commonwealth must establish that "the delivery or possession with intent to deliver of the controlled substance occurred within 1,000 feet of the real property on which is located a public, private or parochial school or a college or university or within 250 feet of the real property on which is located a recreation center or a playground or on a school bus[.]" 18 Pa.C.S.A. § 6317(a). I believe that the Legislature, by its enactment of section 6317, intended to prescribe more severe penalties for drug dealers who prey upon children. Thus, the statute increases the penalty for dealers who make sales, or intend to make sales, in the area around a school, recreation center, playground, or on a school bus. Therefore, I believe that for section 6317 to apply, the Commonwealth must establish

that the defendant sold drugs, or intended to sell drugs, within the proscribed area.

¶ 3 In our recent decision in *Drummond,* the evidence clearly established that Drummond delivered or intended to deliver cocaine within 1,000 feet of a school. As the result of a search warrant executed on Drummond's apartment, police seized $75 and two packets of cocaine from Drummond's person, and three bags of cocaine, $205 in cash, and thirty smaller ziploc bags from the immediate vicinity of Drummond. Moreover, the evidence established that Drummond sold drugs from his apartment, which was located within the proscribed area. *Drummond,* 775 A.2d at 854.

¶ 4 In the present case, the Commonwealth presented no evidence that Hinds conducted drug transactions from his home, that he intended to conduct drug transactions from his home, or that he sold or intended to sell the drugs near the schools located within 1,000 feet of his home. I do not believe that the Legislature intended for section 6317 to apply where, as here, drugs merely were seized from within a residence, and there was no evidence that the defendant sold or intended to sell the drugs within the proscribed area.[8] In my opinion, this section requires the Commonwealth to establish that the defendant intended to deliver the controlled substance within the proscribed area.

¶ 5 For the reasons set forth above, I conclude that the trial court did not err in refusing to apply the mandatory sentenc-

ing provisions of section 6317, and I dissent on that basis.

¶ 6 DEL SOLE, J. and JOHNSON, J. joins this Dissenting Opinion.

DEL SOLE, J.:

¶ 1 I join the dissents of Judge Johnson and Judge Musmanno. I write separately because I conclude that the statute is too vague to permit implementation.

¶ 2 The prohibited conduct must occur "within 1000 feet of real property on which is located a public, private or parochial school or a college or university ..." 18 Pa.C.S.A. § 6317(a). My concern with this language is that the boundary of the "real property" is never marked therefore one cannot know the extent of the proscribed area. Further, in many places, it is not uncommon for institutions of learning to lease commercial space to accommodate students. A literal reading of the statute would extend the "zone" to 1000 feet around a commercial building even if its use as a school is not generally known.

¶ 3 Thus, while I agree with the legislative intent to restrict sales at or near schools, I cannot find this statute sufficiently specific to permit enforcement.

¶ 4 MUSMANNO, J., joins this Dissenting Statement.

---

**8.** I also note that, although the trial court did not apply the mandatory sentencing provisions of section 6317, the court imposed a longer sentence than the two to four years required by that section. The trial court sentenced Hinds as follows: a prison term of three to six years for the conviction of possession with intent to deliver cocaine; a consec-

utive prison term of two to four years for criminal conspiracy to possess cocaine with intent to deliver; a concurrent prison term of one to two years on the charge of possession of marijuana with intent to deliver; and a concurrent prison term of six to twenty-four months on the conviction of prohibited offensive weapons.