COMMONWEALTH of Pennsylvania, Appellee

v.

Monroe WILLIAMS, Appellant.

Superior Court of Pennsylvania.

Submitted May 27, 2008.

Filed Aug. 5, 2008.

Karl Baker, Public Defender, Philadelphia, for appellant.

Hugh J. Burns, Jr., Asst. Dist. Atty., for Com., appellee.

BEFORE: LALLY–GREEN, SHOGAN and HUDOCK, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, Monroe Williams, appeals from the trial court's April 4, 2007, judgment of sentence. We affirm.

¶ 2 The relevant facts and procedural history from the trial court's opinion are as follows:

[A]t approximately 9:45 p.m. on June 14, 2005, Police Officer Thomas Tolstoy, a member of the Narcotics Strike Force, was conducting a plain clothes surveillance in the area of 2700 Hemberger Street in Philadelphia. He observed [Appellant] standing on the left side of the 2700 block of Hemberger [Street]. [Appellant] was wearing a white T-shirt and blue or black pants. [Tolstoy] observed a black female approach [Appellant]. After a brief conversation, [the female] handed money to [Appellant] who then entered the property at 2716 Hemberger Street. After about fifteen seconds, [Appellant] emerged from the house and handed [the female] small objects. Officer Tolstoy relayed information about this exchange to his back-up officers. Police apprehended [the female] a short while later and recovered from her person one clear packet containing cocaine.

A short while later another black female approached [Appellant]. She handed money to [Appellant] who then entered 2716 Hemberger Street, re-emerging about fifteen seconds later. [Appellant] handed small objects to the woman who then left. Not long thereafter, at approximately 10:30 p.m., a black male approached [Appellant], handed him money and, again, [Appellant] entered 2716 Hemberger Street, re-emerged after about fifteen seconds, and handed small objects to the man. Officer Tolstoy observed no one but [Appellant] enter and exit the premises during the surveillance. [Tolstoy] requested back-up, [Appellant] was stopped, and the officers recovered from his person one clear Ziploc bag containing cocaine, another containing marijuana, and $28 in cash.

After obtaining a consent to search form from [a] resident at 2716 Hemberger Street, the police searched the premises and recovered one kitchen plate along with a razor blade both containing powdered cocaine (10 grams), new and unused Ziploc bags, other drug paraphernalia, and [Appellant's] photo identification.

[After a bench trial, the judge convicted Appellant] of the charge of possession with intent to deliver a controlled substance. Following a hearing on April 4, 2007, [the trial judge] found that 18 Pa.C.S.A. § 6317 (Drug-free school zones) applied because [Appellant's] conviction arose out of illegal drug activity within a thousand feet of a school. [The] finding was based on the testimony of Donna Jaconi, a police officer experienced in mapping, who measured the distance between the site of the illegal activity and determined that it took place within 1,000 feet of a nearby school. [The trial judge] imposed a mandatory minimum sentence of two years.

Trial Court Opinion, 11/2/2007, at 2–3 (cita-

tions omitted).[1] This timely appeal followed.

¶ 3 Appellant raises one issue for our review:

Did not the Commonwealth fail to establish that defendant possessed a controlled substance with intent to deliver within 1000 feet of a school, as it failed to demonstrate that the school was open at the time of the incident, and therefore, did not the lower court err in applying the mandatory sentence pursuant to the drug free school zone statute, 18 [Pa.C.S.A.] § 6317?

Appellant's Brief at 3.[2]

¶ 4 Appellant argues that the proper interpretation of 18 Pa.C.S.A. § 6317 (the drug-free school zones statute) requires that the Commonwealth prove that school is in session and not on summer recess for the sentence enhancement to be imposed on Appellant.

█ ¶ 5 "Challenges to the trial court's application of a mandatory sentence provision implicate the legality of sentence. Issues relating to the legality of a sentence are questions of law, as are claims contesting a court's application of a statute. Our scope of review is plenary." *Commonwealth v. Bongiorno*, 905 A.2d 998, 1002 (Pa.Super.2006) (*en banc*) (citation omitted). Furthermore, "[c]laims concerning the illegality of sentence are not waived." *Commonwealth v. Vasquez*, 560 Pa. 381, 744 A.2d 1280, 1284 (2000) (citation omitted).[3]

¶ 6 The drug-free school zones statute provides in relevant part:

A person 18 years of age or older who is convicted in any court of this Commonwealth of a violation of section 13(a)(14) or (30) of the act of April 14, 1972 (P.L. 233, No. 64) [35 P.S. § 780–113(a)(14) or (30) ], known as The Controlled Substance, Drug, Device and Cosmetic Act, shall, if the delivery or possession with intent to deliver of the controlled substance occurred within 1,000 feet of the real property on which is located a public, private or parochial school or a college or university or within 250 feet of the real property on which is located a recreation center or playground or on a school bus, be sentenced to a minimum sentence of at least two years of total confinement, notwithstanding any other provision of this title, The Controlled Substance, Drug and Cosmetic Act or other statute to the contrary.

18 Pa.C.S.A. § 6317(a).

¶ 7 When interpreting statutes, this Court must refer to the Statutory Construction Act. 1 Pa.C.S.A. § 1901–1991. Section 1921 of the Act provides the following guidelines:

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

(b) When the words of a statute are clear and free from all ambiguity,

---

1. The trial court cited *Commonwealth v. Teeter*, 2007 Pa.Super. LEXIS 3091 (Pa.Super. August 14, 2007), to support imposing the drug-free school zone sentence enhancement. We note that this opinion was withdrawn, as *en banc* review is pending. We note that the fixed nature of a school or a playground is significantly different from the facts of the *Teeter* case, which involves school bus stops.

2. Appellant included this issue in a timely concise statement of matters complained of on appeal. Pa.R.A.P.1925(b).

3. The Commonwealth's argument that Appellant waived this issue is incorrect in light of *Bongiorno*. The Commonwealth fails to acknowledge *Bongiorno* in its waiver argument.

the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstance under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S.A. § 1921.

¶ 8 This Court is to give the words of a statute their plain and ordinary meaning, and construe the words in accordance with their common and accepted usage. *Commonwealth v. Drummond,* 775 A.2d 849, 855–856 (Pa.Super.2001) *(en banc)* (citation omitted). We are to consider the grammatical context of the words, and presume that every word, sentence or provision in the statute is intended to serve a purpose, and must be given effect. *Id.*

¶ 9 Moreover:

[A] penal statute is a statute that defines criminal offenses and specifies corresponding fines and punishment. Penal statutes must be strictly construed. Strict construction does not require that the words of a criminal statute be given their narrowest meaning or that the Legislature's evident intent be disregarded. Language which is capable of more than one meaning can be clear and unmistakable in the context of its usage by the selection of the meaning which is neither forced nor strained.

*Commonwealth v. Campbell,* 758 A.2d 1231, 1236–1237 (Pa.Super.2000) (citations and quotation marks omitted).

■ ¶ 10 Prior decisions of this Court have rejected attempts to read limits into the drug-free school zones law that do not appear in the text of the statute itself. *See Campbell; Drummond;* and *Commonwealth v. Hinds,* 775 A.2d 859 (Pa.Super.2001) *(en banc).* In *Campbell,* the earliest of these three cases, the Commonwealth appealed the trial's court decision that the drug-free school zones statute did not apply to defendant's conviction when the drug delivery occurred within 250 feet of a playground on privately owned property. *Campbell,* 758 A.2d at 1233. The trial court reasoned that the General Assembly intended the enhancement to apply only to playgrounds near schools. *Id.* at 1235. In reversing the trial court, this Court held that "the statutory language does not limit the term 'playgrounds'" to school areas. *Id.* Therefore, we applied the § 6317 sentencing enhancement to playgrounds on private property. *Id.* at 1238.

¶ 11 In the 2001 *en banc* case of *Drummond,* the defendant appealed the trial court's decision to impose the sentence enhancement for drug-related violations. Defendant argued that while his residence was located only 587 feet from a school, the statute should not apply to him because his residence was not open to the public. *Drummond,* 775 A.2d at 855. In affirming the trial court, this Court concluded that the word "zone" in the statute includes a residence that is within the requisite distance from a school, even though it is not accessible to school children. *Id.* at 857. This Court also refused to require that the site of the illicit drug sale be open to the public. *Id.* We concluded that the

"statute is intended to curtail not only drug transactions involving children, but also to protect young children from [the] illegal activity ... [associated] with the drug trade." *Id.*

¶ 12 In *Hinds*, also a 2001 *en banc* case, the Commonwealth appealed the trial court's sentence of the defendant because it did not include the sentence enhancement. Though the defendant stipulated that his residence was located within 1,000 feet of a school, the trial court found that the statute did not apply because the sale did not involve minors. *Hinds*, 775 A.2d at 861. On appeal, the defendant argued that the trial court did not commit reversible error because in order for the drug-free school zones statute to apply, the underlying offense must involve minors. *Id.* We reversed the trial court, reasoning that the General Assembly sought to protect children from the harms of the drug trade, and those "harms are present when the individual merely resides within [the school zone] ... [even though] the drugs are not necessarily accessible to children." *Id.* at 863.

¶ 13 *Hinds* summarized our approach to § 6317 as follows:

It is our finding that the General Assembly's goal and purpose [in enacting this statute] was to protect the children of our communities from the ravages and evils of the illegal drug trade that pervades our country. Through the enactment of section 6317, it attempted to fortify the barrier that segregates the places where our children frequent from the illegal drug scene. A strict reading of the statute exemplifies the General Assembly's intent. The statute protects our children **"within 1000 feet of the real property on which is located a public, private or parochial school or a college or a university."** Furthermore, it protects our children in the places where they routinely play. The General Assembly did not choose to limit this protection solely to school play areas or municipal facilities, but chose to reinforce the purpose of the statute by including all areas within 250 feet of the real property on which is located a recreational center or playground.

*Id.* at 862–863 (citations omitted; emphasis in original).

 ¶ 14 *Campbell, Drummond,* and *Hinds* all support the conclusion that the time of the year (*i.e.,* summer recess) is not relevant to a proper interpretation of § 6317. "The statute clearly does not require anything more than the actor delivering or possessing drugs within the requisite distance from the school." *Drummond,* 775 A.2d at 857. Furthermore, *Hinds* makes clear that the language in the statute is not ambiguous, as it applies to anyone "within 1000 feet of the real property[.]" *Hinds,* 775 A.2d at 863; 18 Pa.C.S.A. § 6317. Nothing in the statutory language evinces legislative intent to limit its application to the school year. The General Assembly included no such express limitation and it is not the province of the judiciary to create one.[4]

¶ 15 In light of the foregoing, Appellant's argument fails. We therefore affirm the judgment of sentence.

¶ 16 Judgment of sentence affirmed.

---

4. Our finding today is consistent with other jurisdictions with similar statutes. The drug free school zone is not limited to the regular school year and applies at all times during the year in California. *People v. Williams,* 10 Cal.App.4th 1389, 13 Cal.Rptr.2d 379 (1992). The court reasoned that since there is no language that expressly limits the application of the statute to just the school year, it applies all year. *Id.* at 381.