577 A.2d 1349

Marlene DRANZO and John Dranzo Her
Husband, Appellants,

v.

Kenneth L. WINTERHALTER, Individually and Kevin Scott
Wightman, Individually and as Agent for Gary Kossel, and
Vicky Kossel, t/d/b/a Vic's Pizza, and Gary Kossel, and
Vicky Kossel, t/d/b/a Vic's Pizza, a Business Entity and
Individually.

Marlene DRANZO and John Dranzo Her Husband

v.

Kenneth L. WINTERHALTER, Individually and Kevin Scott
Wightman, Individually and as Agent for Gary Kossel, and
Vicky Kossel, t/d/b/a Vic's Pizza, and Gary Kossel, and
Vicky Kossel, t/d/b/a Vic's Pizza, a Business Entity and
Individually. (Two Cases)

Appeal of Kevin Scott WIGHTMAN. (Two Cases)

Appeal of Gary KOSSEL and Vicky Kossel, t/d/b/a Vic's
Pizza, and Gary Kossel and Vicky Kossel t/d/b/a Vic's
Pizza, a Business Entity and Individually.

Sheri DRANZO, a Minor by John DRANZO, Her Parent and
Natural Guardian, and John Dranzo, Individually

v.

Kenneth L. WINTERHALTER, Individually and Kevin Scott
Wightman, Individually and as Agent for Gary Kossel, and
Vicky Kossel, t/d/b/a Vic's Pizza, and Gary Kossel, and
Vicky Kossel, t/d/b/a Vic's Pizza, a Business Entity and
Individually. (Two Cases)

Appeal of Gary KOSSEL and Vicky Kossel, t/d/b/a Vic's
Pizza, a Business Entity and Individually.

Superior Court of Pennsylvania.

Argued April 3, 1990.

Filed June 13, 1990.

Reargument Denied Aug. 13, 1990.

Anthony J. Seneca, Washington, for Dranzo.

Timothy D. Appelbe, Pittsburgh, for Wightman.

John M. Giunta, Pittsburgh, for Kossel.

Before DEL SOLE, JOHNSON and FORD ELLIOTT, JJ.

JOHNSON, Judge:

This is a consolidated appeal from the judgment entered in favor of plaintiffs Marlene Dranzo and John Dranzo, her husband (Dranzo). We affirm on all issues raised by the appellants and cross-appellants.

The incident giving rise to this litigation was an automobile accident occurring shortly after 7 p.m. on December 22, 1986 in Somerset Township at or near the intersection of Route 917 and Circle Road. Defendant Kenneth L. Winterhalter was driving a truck west on Circle Road and approaching its intersection with Route 917, a through highway. Defendant Kevin Scott Wightman, who was employed by defendants Gary Kossel and Vicky Kossel, trading as Vic's Pizza, was driving north on Route 917 in a Chevrolet Nova. Marlene Dranzo was driving south on Route 917 with her daughter Sheri as passenger in her Chevrolet Celebrity. The truck driven by Winterhalter and the Chevrolet Nova driven by Wightman collided at the intersection. Immediately thereafter, the Wightman car veered into the southbound lane of Route 917 and collided with the Dranzo car. Both Marlene Dranzo and her daughter Sheri sustained injuries.

The complaint sought damages for Marlene and for Sheri Dranzo's injuries and for John Dranzo's loss of consortium as husband of Marlene Dranzo. The case was tried by jury

in Washington County before the Honorable Samuel L. Rodgers. Prior to trial the court denied a motion brought by the Kossels for a change of venue because Dranzo was employed by the Court of Common Pleas of Washington County. The court granted the Dranzos' pre-trial motion to exclude testimony of an expert witness that the injuries would not have occurred had the Dranzos been wearing seat belts. Defendant Winterhalter failed to respond to the complaints, and default judgments were entered against him. Following trial the jury returned verdicts on December 16, 1988 in favor of Sheri Dranzo and her father John Dranzo in the amount of $40,070.90 and in favor of Marlene Dranzo and John Dranzo in the amount of $136,173.40. The jury attributed eighty per cent of the causal negligence to Winterhalter and twenty per cent to Wightman and his employer the Kossels. Wightman and the Kossels filed post-trial motions seeking a new trial on the issue of liability, which was denied by the court en banc on July 21, 1989. By the same order the court en banc also awarded the Dranzos delay damages pursuant to Pa.R.C.P. 238.

On appeal the Dranzos seek greater damages either by additur or by a new trial on the damage issue only. Defendants Wightman and the Kossels challenge the denial of the change of venue, the preclusion of seat belt evidence and assign error to aspects of the jury charge concerning assured clear distance, sudden emergency and circumstantial evidence. They also question the constitutionality of the delay damage rule. Finding no merit to these issues, we affirm the order appealed from in all respects.

First we address Dranzo's contention that the trial court abused its discretion in failing to order an additur to the verdict amount, or, in the alternative, in failing to set aside the jury's verdict and to order a new trial limited to the issue of damages. The duty to assess damages is squarely within the province of the jury, who as the finders of fact weigh the veracity and credibility of the witnesses and their testimony. *Cree v. Horn*, 372 Pa.Super 296, 539

A.2d 446 (1988), *appeal denied* 519 Pa. 660, 546 A.2d 621 (1988).

██ Our standard upon reviewing a trial court's decision that damages were adequate and that it should thus refuse to grant a new trial is extremely narrow:

> It is well established law in the Commonwealth that a decision to grant a new trial because of any impropriety in the verdict is well within the discretion of the trial court and in the absence of a clear abuse of its considerable discretion will not be disturbed on appellate review. *Reitz v. Donise Enterprise,* 319 Pa.Super. 76, 465 A.2d 1060 (1983). Our court has set forth the following criteria to determine when a verdict can be set aside as inadequate:
>
> > A verdict is set aside as inadequate when it is so inadequate as to indicate passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff. If the verdict bears a reasonable resemblance to the damages proved, the appellate court will not disturb the verdict merely because the damages are less than the reviewing court might have awarded. (citations omitted).
>
> *Slaseman v. Myers,* 309 Pa.Super. 537, 540–541, 455 A.2d 1213, 1215 (1983).

*Smith v. Barker,* 368 Pa.Super. 472, 475–476, 534 A.2d 533, 535 (1987), *appeal denied* 520 Pa. 577, 549 A.2d 137 (1988). To support the grant of a new trial for inadequacy of the damage award, the injustice of the verdict "should stand forth like a beacon." *Cooley v. Jefferson Bank,* 355 Pa.Super. 1, 4, 512 A.2d 713, 714 (1986) (citing numerous cases).

As the Honorable Samuel J. Rodgers wrote in his opinion of 7–21–89, Marlene Dranzo suffered severe injuries in this accident, primarily a fracture to her left hip and her left heel. She claimed that she still has pain, that she has a permanent limp and that her earning capacity has been permanently diminished. The parties stipulated to the

amount of medical expenses and wage loss, amounting to a total of $23,416.01. The jury returned a total verdict of $118,736.01 for Marlene Dranzo, damages in the amount of $27,000.00 for daughter Sheri Dranzo, and damages in the amount of $5,000.00 for John Dranzo for loss sustained as Marlene's husband and in the amount of $13,070.90 for loss sustained as Sheri's father. N.T., February 9–15, 1989 at 636.

The trial court wrote:

No doubt the injuries suffered by Mrs. Dranzo may well have supported a considerably higher verdict, but the fact remains that all of this evidence was presented to the jury, and this court cannot say that the amount of the verdict shocks the conscience of the court. Generally, the consortium claim of her husband, John Dranzo, rests on the oral testimony of these plaintiffs, and essentially, the amount awarded must be determined by the good sense of the jury upon consideration of all the evidence.

Opinion, 7–21–89 at 17. We agree with the trial court. Our careful review of the record convinces us that no injustice has been done in this case. We conclude that the trial court did not abuse its discretion in refusing to grant a new trial on the issue of damages.

Dranzo's allegation that the court should have added to the jury verdict (additur) must fail. As we stated above, it is the jury's province to determine amount of damages. The court determined that the award of damages was acceptable. Therefore, it could not have been required to add to the verdict. Dranzo relies upon *Svoboda et ux. v. City of Pittsburgh et al.*, 34 D. & C. 47 (1938) for the proposition that a court may add to a verdict in certain circumstances. That case held that, where a court decides that a new trial was warranted, and if the defendant then agrees to pay the additional damages, the court should not be prevented from allowing the defendant to pay in lieu of a new trial, for then a new trial would have no purpose. The present case does not fit this scenario. Here, the court decided that the damage award was proper, and Dranzo

does not allege that the defendants had agreed to pay additional damages but were refused by the court. Hence, Dranzo's entire line of reasoning regarding additur is inapplicable to the present case.

■ Next we will address the issues raised by Wightman and adopted by the Kossels as their issues. Wightman alleges that the court abused its discretion in denying his motion for a change of venue. Wightman argues that because Dranzo was employed as the Deputy Clerk of Courts for the Court of Common Pleas of Washington County, because Barbara Gibbs, the Clerk of Courts, was to be called as a witness, and because Dranzo was acquainted with the judge, a fair trial could not be held in Washington County. This claim fails. Pa.R.C.P. 1006 provides:

> (2) Where, upon petition and hearing thereon, the Court finds that a fair and impartial trial cannot be held in the County for reasons stated of record, the Court may order that the action be transferred....

Pa.R.C.P. 1006.

■ A decision on a petition for a change of venue is within the trial court's discretion. *Winpenny v. Winpenny*, 296 Pa.Super. 299, 442 A.2d 778 (1982). A change of venue is not granted lightly or without real necessity, and the applicant bears the burden of proving that the change of venue is necessary. *Pennsylvania Power & Light Co. v. Gulf Oil Corporation*, 270 Pa.Super. 514, 411 A.2d 1203, 10 A.L.R.4th 1025 (1979), *cert. denied* 446 U.S. 966, 100 S.Ct. 2943, 64 L.Ed.2d 825 (1980). The defendants' written motion for a change of venue listed Dranzo's employment with the Court of Common Pleas as the sole reason for the request. No testimony was offered, nor did the defendants attempt in any other way to prove that any of the other factors would bias or prejudice the trial. The defendants did not meet their burden of proving that prejudice would inure and that change of venue was necessary. The trial court did not abuse its discretion in denying the petition for change of venue.

■ Next Wightman claims that the trial court erroneously excluded evidence that Dranzo and her daughter were not wearing seat belts. Wightman argues that 75 Pa.C.S. § 4581(e), the statute precluding such evidence, is an unconstitutional exercise of the police power. Section 4581 requires front seat occupants of passenger cars, trucks or motor homes to wear seat belts. Section 4581(e), however, provides in pertinent part:

In no event shall a violation or alleged violation of this subchapter be used as evidence in a trial of any civil action; nor shall any jury in a civil action be instructed that any conduct did constitute or could be interpreted by them to constitute a violation of this subchapter; nor shall failure to use a ... safety seat belt system be admissible as evidence in the trial of any civil action....

75 Pa.C.S. § 4581(e).

■ Preliminarily, we reject Dranzo's position that Wightman failed to preserve his constitutional argument by not notifying the Attorney General "promptly" pursuant to Pa.R.C.P. 235. The trial court granted Dranzo's pre-trial motion in limine to exclude evidence that Dranzo and her daughter were not wearing seat belts. In post-trial motions Wightman renewed an objection to the preclusion of the "seat belt defense" by challenging the constitutionality of 75 Pa.C.S. § 4581(e). At this point Wightman complied with Rule 235 by notifying the Attorney General. We find no interpretation of Rule 235 construing the promptness provision as requiring notification the first time the underlying issue is raised at trial, as Dranzo argues. To the contrary, it has been held that Rule 235 was satisfied where the trial court did not address the constitutional issue and where the Attorney General was duly notified when the issue was raised on appeal. *Commonwealth v. Stein*, 487 Pa. 1, 406 A.2d 1381 (1979); *James v. Southeastern Pa. Transit Authority*, 312 Pa.Super. 512, 459 A.2d 338 (1983) *reversed on other grounds in* 505 Pa. 137, 477 A.2d 1302 (1984). Therefore, we conclude that Wightman substantially complied

with Rule 235, and we will address his constitutional argument.

Wightman's challenge is to a legislatively established rule of evidence. It is well settled that the legislature of a state has the power to prescribe new rules of evidence, providing that they do not deprive any person of his constitutional rights. *See* 29 AmJur2d § 9 (1967). Enactments of the General Assembly enjoy a strong presumption of constitutionality with all doubts resolved in favor of sustaining the constitutionality of the legislation. *Insurance Adjustment Bureau v. Insurance Commissioner*, 108 Pa.Commw. 418, 530 A.2d 132, (1987), *reversed on other grounds*, 518 Pa. 210, 542 A.2d 1317 (1987). A party challenging the constitutionality of a statute has a heavy burden of rebutting the presumption of constitutionality and showing that the statute clearly, plainly and palpably violates either the Federal or Pennsylvania constitutions. *Id.*

We interpret Wightman's argument to be that section 4581(e) is an unconstitutional exercise of the legislative police power because it deprives him of due process of law. The state's police power, pursuant to which it regulates private rights in the public interest, is far-reaching; however, like every substantive power exercised by the states, it is circumscribed by the due process clause. *Krenzelak v. Krenzelak*, 503 Pa. 373, 469 A.2d 987 (1983). Wightman does not specifically state whether his alleged due process denial is substantive or procedural in nature. Because he alleges no specific procedural deprivation, we will address this as a substantive due process challenge. *See Whitling v. Commonwealth, Unemployment Compensation Board of Review*, 95 Pa.Commw. 500, 504 n. 8, 505 A.2d 1101, 1103, n. 8 (1986) appeal denied 514 Pa. 640, 523 A.2d 346 (1986).

Wightman agrees that no fundamental right is at issue here. Absent a fundamental right, the standard of review for a substantive due process challenge is whether

the statute at issue has a reasonable basis, "whether it was irrational for the law to have been passed at all,.... that there is no relationship between the statute and a legitimate state interest." *Morris v. Public School Employees' Retirement System*, 114 Pa. Commw. 369, 378, 538 A.2d 1385, 1389 (1988). A law that purports to be an exercise of police power must not be arbitrary, unreasonable or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the object sought to be attained. *Commonwealth v. Zasloff*, 338 Pa. 457, 13 A.2d 67 (1940). It is the prerogative of the legislature, and not of the courts, to resolve matters of public policy. *Commonwealth v. Knowles*, 373 Pa.Super. 203, 540 A.2d 938 (1988), appeal denied 520 Pa. 614, 554 A.2d 507 (1988). It is the prerogative of the courts to decide whether the legislature has overstepped its power by violating constitutional restraints. *Zasloff, supra.*

The central premise of Wightman's argument is that the legislative purpose at issue is the purpose of promoting use of seat belts. It is this purpose that he analyzes in order to demonstrate that section 4581(e) is irrational in relation to it and thus is unconstitutional. While clearly the purpose of 4581 generally is to get people to use seat belts, 4581 generally is not at issue here. Rather, it is the purpose of the legislature's creation of the evidentiary rule in (e) that is at issue. Wightman provides no analysis of the purpose of this provision, let alone for the rational relation it bears to the statute. We are left with the presumption of constitutionality, which Wightman has not overcome.

While Wightman spends considerable time discussing what courts in other jurisdictions have written about the "seat belt defense" as well as what Pennsylvania courts had written before the enactment of section 4581, none of this is relevant to the constitutional question raised by Wightman himself, whether Pennsylvania's 75 Pa.C.S. § 4581(e) is rationally related to the purpose for which it was enacted. Exclusion of evidence that may preclude a defense could raise many interesting legal questions, none

of which are at issue here and none of which, according to Wightman's own brief, raise constitutional concerns. *See* Annotation, *Automobile Occupant's Failure to Use Seat Belt as Contributory Negligence*, 92 A.L.R.3d 9 (1979). We conclude that Wightman's challenge to the constitutionality of 4581(e) must fail.

Next Wightman challenges five aspects of the court's instruction to the jury. First, Wightman alleges that the court erred in charging the jury on the comparative negligence statute without also charging that the plaintiffs would be entitled to recover the full amount of the verdict against any defendant found liable. The comparative negligence statute provides:

> (b) **Recovery against joint defendant; contribution.**— Where recovery is allowed against more than one defendant, each defendant shall be liable for that proportion of the total dollar amount awarded as damages in the ratio of the amount of his causal negligence to the amount of causal negligence attributed to all defendants against whom recovery is allowed. The plaintiff may recover the full amount of the allowed recovery from any defendant against whom the plaintiff is not barred from recovery. Any defendant who is so compelled to pay more than his percentage share may seek contribution.

42 Pa.C.S. § 7102. The second and third sentences of the statute relate to the fact that joint tortfeasors are jointly and severally liable for the plaintiff's damages. *See Tindal v. SEPTA*, 385 Pa.Super. 94, 560 A.2d 183 (en banc) (1989). The court recited to the jury verbatim the first sentence of the passage above. N.T., February 15, 1989 at 622. Wightman argues that the court should have given the jury the following submitted point for charge:

> You should consider that your finding of any percentage of causative fault against any defendant will result, under our law, in that defendant being responsible to the plaintiff or plaintiffs for the entire amount of any damages you might decide to award.

R.R. at 378a. Wightman's Proposed Supplemental Points for Charge, No. 2.

We agree with the trial court that the collectability or uncollectability of a judgment, the operation of joint and several liability, is simply not relevant to the jury's consideration of whether the defendants were causally liable and in what percent. As the court pointed out, neither the court nor the jury can say with assurance how much of the verdict rendered, if any, any one of the joint tortfeasors will in fact pay. The trial court noted that Wightman concedes that telling the jury that defendant Winterhalter was without liability insurance would have been reversible error. Collectability of a judgment has no bearing upon liability. Wightman's suggestion that, had the jury been instructed on joint and several liability, they might have reached a different conclusion regarding cause of the accident is precisely the reason why the court was correct in refusing the instruction. The jury could have been confused, and the court properly prevented this. We find no error in the court's charge on this point.

Wightman's next allegation of error is that the following charge to the jury was improper because it invited the jury to draw inferences about the numerical speed that Wightman was driving based upon certain facts that had been testified to at trial:

In this case, you have heard what the law calls circumstantial evidence. Circumstantial evidence consists of proof of facts of circumstances from which it is reasonable to infer the existence of another fact. For example, a man may very well testify whether it was snowing at a particular time because he looked outside and saw the snow falling. This is direct evidence. It may be, however, that he did not actually see the snow coming down, but if he gets up one morning and looks and sees fresh snow where there was none the night before, he can testify to these facts and the jury may infer that it snowed during the night. The jury can consider circum-

stantial evidence and you should give it whatever weight you believe it deserves.

In this case, you have heard the oral testimony of some of the parties, and an eye witness as to how this accident occurred. This type of testimony is direct evidence. In addition, you have heard testimony about the location and position of the vehicles after the accident, the location and extent of the damage to the vehicles involved, the location and length of tire or skid marks north of the intersection. This evidence is circumstantial evidence which you may and should consider, along with all of the evidence, in determining how this accident happened and the extent of the causal negligence, if any on the part of the defendants.

N.T., February 15, 1989 at 594–595. At no point did the trial judge invite the jury to use the circumstantial evidence to establish the speed of the vehicle in a numerical value, which would, as Wightman states, require expert opinion. Circumstantial evidence can be used by a jury to determine whether the vehicle was traveling at a safe and appropriate speed. *Carol v. Kurz*, 255 Pa.Super. 198, 386 A.2d 577 (1978). The trial court's circumstantial evidence charge was proper.

 Wightman avers that there was insufficient evidence to support a charge on the assured clear distance rule. This conclusion is not supported by the record. The assured clear distance rule, codified at 75 Pa.C.S. § 3361, requires that the driver maintain such control as will enable him to stop and avoid obstructions that fall within his vision, *Jeng v. Witters*, 452 F.Supp. 1349 (MD.Pa.1978), *affirmed General Motors v. Cheng*, 591 F.2d 1334 (1979), and requires the driver travelling in darkness to keep his vehicle under control so that he can always stop within the range of his headlights. *Id.* There was ample evidence to allow a jury to conclude that Wightman was speeding and thus going too fast to be able to stop within the assured clear distance. The facts presented at trial were sufficient to support the court's charge.

■ Wightman's next claim of error is that the use of the word "emergency" in the following statement causes the statement to contradict the court's subsequent correct charge on the sudden emergency doctrine:

Even though an operator may have the right-of-way, he must still exercise the duty of care generally required of operators at an intersection. That is, they must maintain a proper lookout and have their vehicle under such control that it can be stopped upon any *emergency* reasonably likely to arise.

N.T., February 15, 1989 at 575 (emphasis added). Wightman's claim is totally without basis. The above is a correct statement of the law. A driver must anticipate emergencies reasonably likely to arise. *Wilson Freight Forwarding Co. v. Seal,* 367 Pa. 18, 79 A.2d 648 (1951); see *Meyer, Law of Vehicle Negligence in Pennsylvania,* §§ 1.50, 20.-07. The sudden emergency doctrine creates an exception to this general rule. It excuses a driver who suddenly and unexpectedly finds himself confronted with a perilous situation that permits no opportunity to assess the danger and to respond appropriately. *McKee by McKee v. Evans,* 380 Pa.Super. 120, 551 A.2d 260 (1988) *appeal denied in Carroll by Carroll v. Evans,* 522 Pa. 600, 562 A.2d 824 (1989). We find no error in the court's instruction to the jury.

■ The last of Wightman's claims of error to the jury charge is that the court erred in charging that Wightman had the burden of proving that he was confronted by a sudden emergency in a context that created an impression that, if Wightman failed to meet that burden, he could be found liable, even if the plaintiffs failed to meet their burdens of proof on the issues of negligence and legal cause. The court clearly stated that "the plaintiffs have the burden of proving those contentions which entitle them to relief. When a party has a burden of proof on a particular issue, his contentions on that issue must be established by a fair preponderance of the evidence." N.T. at 582. The court charged that Wightman, in order to successfully establish the sudden emergency defense, must

establish the alleged emergency by a preponderance of the evidence. N.T. 2–15–89 at 579. Our thorough review of the charge does not bear out Wightman's claim that the context of these statements distorts their meaning. This claim has no merit.

■ Finally, Wightman argues that the newly revised Pa.R.C.P. 238, which authorizes imposition of delay damages, is unconstitutional and that therefore the trial court's award of delay damages was error. This court has upheld the constitutionality of new Rule 238 in *Dietrich v. J.I. Case Co.*, 390 Pa.Super. 475, 568 A.2d 1272 (1990). As we wrote in that case, any further determination on this issues can only emanate from the Supreme Court.

For all the foregoing reasons, we affirm the judgment of July 31, 1989.

Judgment affirmed.