J-A09022-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BARBARA STEMMERICH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GLENN MASSUNG, III AND | : | No. 1151 WDA 2017 |
| PITTSBURGH MOBILE TELEVISION, | : | |
| INC. | : | |

Appeal from the Judgment entered July 25, 2017
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD 15-023133

BEFORE:  BOWES, J., DUBOW, J., and MURRAY, J.

MEMORANDUM BY DUBOW, J.:                        **FILED JULY 10, 2018**

Appellant, Barbara Stemmerich, appeals from the July 25, 2017 entry of Judgment on the jury's verdict in this personal injury matter.  She contends that the evidence did not support the jury's relatively low non-economic damages award.  After careful review, we affirm.

The facts and procedural history, as gleaned from the record, are as follows.  On January 31, 2014, Appellee, George Massung, while employed by Appellee Pittsburgh Mobile Television, Inc., was driving at a low rate of speed when he rear-ended Appellant's vehicle causing her car to hit the car in front of her.  As a result of the accident, Appellant's chest struck her steering wheel and her knees struck the dashboard before she was thrust backwards, the

force of the thrust breaking her seat. Appellant was 68 years old at the time of the accident, and suffered from numerous pre-existing medical conditions.[1]

Following the accident, paramedics took Appellant to the emergency room. Appellant complained of pain in her right knee from it hitting the dashboard and of pain in her chest from the pressure of her seatbelt. An x-ray showed no fracture or other obvious injury to her artificial right knee joint,[2] and there was bruising visible on the left side of her chest. The hospital discharged Appellant the same day after diagnosing her with no serious injury.

Due to her pre-existing medical conditions, Appellant already had a regular appointment with her pain management specialist, Dr. Till Conerman, scheduled for three days after the accident. At that visit, she complained to Dr. Conerman of pain in her low back and mid back radiating down her leg. Dr. Conerman treated Appellant by continuing previously prescribed physical therapy, muscle relaxers, and Vicodin. During subsequent appointments, Dr. Conerman injected steroids into the most painful areas of Appellant's back.

Three days after the accident, Appellant also saw her treating orthopedic surgeon, Dr. Yram Groff. She reported to Dr. Groff that she had increased pain in her right shoulder. Dr. Groff treated Appellant with continued physical

---

[1] Appellant's pre-existing conditions included reconstructive right foot and ankle surgery; reflex sympathetic dystrophy/complex regional pain syndrome of the right leg; low back pain caused by sacroiliitis; fibromyalgia; right knee replacement surgery; right shoulder rotator cuff tendinitis; left knee bone-on-bone arthritis; severe stenosis of the lumbar spine; and right shoulder bone spur and arthritis. *See* Trial Ct. Op., 9/28/17, at 2.

[2] Appellant had had her right knee joint replaced in May 2011.

therapy, pain medication, and steroid injections. Appellant underwent an MRI test of her right shoulder on August 20, 2014, which showed a partial tear of her rotator cuff. On October 31, 2014, Dr. Groff performed arthroscopic surgery on Appellant's right shoulder, debriding the partial tear of the rotator cuff, decompressing the area around the rotator cuff, removing a pre-existing bone spur, and removing the end of the clavicle bone to treat pre-existing arthritis.

On March 22, 2016, Appellant filed a Complaint to recover damages for the injuries that she alleged she had sustained as a result of Appellee's negligence.

A two-day trial commenced on April 3, 2017. Following the close of evidence, the trial court entered a directed verdict on liability in Appellant's favor. Thus, the only issue before the jury was Appellant's damages.

In support of her damages claim, Appellant presented the live testimony of her husband and daughter, and the video deposition testimony Dr. Conerman and Dr. Groff. Appellee presented the deposition testimony of Dr. James Cosgrove, an expert witness specializing in pain management, who conducted an independent medical examination of Appellant for purposes of this litigation.

Relevant to the instant appeal, Dr. Groff and Dr. Conerman testified extensively about Appellant's pre-existing medical conditions, the injuries that she had sustained in the instant accident, and her prognosis. Appellant's witnesses concluded that the accident had aggravated Appellant's pre-existing

conditions, and caused some additional medical issues including a partial tear of her rotator cuff and low back pain. *See* N.T. Groff, 3/28/17, at 55; N.T. Conerman, 3/23/27, at 32-33. Dr. Conerman testified that, although Appellant's condition has improved since the accident, it was likely that Appellant's pain would be a chronic ongoing condition. N.T. Conerman at 36-37, 80.

Appellee's expert witness, Dr. Cosgrove, also testified about Appellant's numerous pre-existing conditions. He stated that, by the time of his independent medical examination of Appellant for purposes of this litigation, he "could find no residual impairment that I would ascribe – or attribute to the motor vehicle accident in question[.]" N.T. Cosgrove, 3/17/17, at 44. Dr. Cosgrove also testified that the appearance of post-accident degenerative changes to Appellant's low back spine was not related to the instant accident; rather, it was attributable to age-related degeneration. *Id.* at 35-37. He opined that Appellant's right shoulder injury that resulted in surgery was not related to the car accident. *Id.* at 39-40. However, Dr. Cosgrove also stated that because of the extent of Appellant's chronic and slowly progressing pre-existing conditions, he had difficulty in "trying to determine whether [the accident] was a . . . cause or significant contributing factor[]" of Appellant's post-accident complaints. *Id.* at 16.

In sum, while the parties' witnesses largely agreed that Appellant suffered a multitude of pre-existing conditions, they disagreed on the impact of the accident on Appellant's post-accident health and her prognosis.

On April 4, 2017, the jury returned a verdict in favor of Appellant, awarding her $1,170 for her past medical expenses and $600 for pain and suffering.

On April 6, 2017, Appellant filed a Post-Trial Motion requesting a new trial on damages, or, in the alternative, additur. The court held a hearing, after which it denied the Motion. The court entered Judgment on the verdict on July 25, 2017.

This appeal followed. Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

1. Did the [t]rial [c]ourt err as a matter of law in denying [Appellant's] Motion for Post-Trial Relief for a new trial on damages when the damage award was so contrary to the evidence that it shocked one's sense of justice?

2. Was the jury's award for non-economic damages so low, by contemporary economic damages, it was nothing more than inadequate?

Appellant's Brief at 2.

We address Appellant's interrelated issues together. In her first issue, Appellant challenges the weight the jury gave to the evidence. She disputes what she characterizes as the trial court's "speculat[ion] that the jury might have found that the opinions of Dr. Cosgrove were more credible than [her] treating physicians, despite the fact that Dr. Cosgrove conceded that [Appellant's] treating physicians were in a better position to assess [her]

injuries." *Id.* at 22. She avers that Dr. Cosgrove conceded that she had suffered significant injuries. *Id*.

In her second issue, Appellant claims that the trial court abused its discretion in not granting her request for a new trial because the jury's non-economic damages award of $600 did not adequately compensate her for the losses caused by Appellee's negligence. *Id.* at 21, 36-37. She posits that the jury's award was "for all practical purposes a non-award, equivalent to a $0 award." *Id.* at 23. We conclude that Appellant is not entitled to relief on either issue.

Our standard of review of an order denying a Motion for a New Trial is well-settled. We consider "whether the trial court clearly and palpably committed an error of law that controlled the outcome of the case or constituted an abuse of discretion." *Schmidt v. Boardman Co.*, 958 A.2d 498, 516 (Pa. Super. 2008) (citation omitted). We examine the evidence in the light most favorable to the verdict-winner and, "to reverse the trial court, we must conclude that the verdict would change if another trial were granted." *Id.* (citation omitted).

Where a jury has made credibility determinations regarding the testimony and evidence presented, those determinations are rarely overturned. *Armbruster v. Horowitz*, 744 A.2d 285, 287 (Pa. Super. 1999). In order to prevail on a challenge to the weight of the evidence, the verdict must be so "contrary to the evidence as to shock one's sense of justice[.]" *Lanning v. West*, 803 A.2d 753, 765 (Pa. Super. 2002) (quotation and

citation omitted). A new trial "will not be granted on the ground that the verdict was against the weight of the evidence where the evidence is conflicting and the fact-finder could have decided in favor of either party." *Id.* at 766 (citation omitted).

When considering challenges to the weight of the evidence, we note that, "[i]t is well-settled in Pennsylvania that the weight of the evidence and the credibility of witnesses are issues for the jury who is free to believe some, all, or none of the evidence presented." *Odato v. Fullen*, 848 A.2d 964, 966 (Pa. Super. 2004).

With respect to a claim for additur, we note the following principles. "A verdict is set aside as inadequate when it is so inadequate as to indicate passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff." *Dranzo v. Winterhalter*, 577 A.2d 1349, 1352 (Pa. Super. 1990) (citation and quotation omitted). Further, "[i]f the verdict bears a reasonable resemblance to the damages proved, the appellate court will not disturb the verdict merely because the damages are less than the reviewing court might have awarded." *Id.* "To support the grant of a new trial for inadequacy of the damage award, the injustice of the verdict should stand forth like a beacon." *Id.* (citation and quotation omitted).

Following our review of the evidence and the relevant case law, we find that the trial court did not abuse its discretion in denying Appellant's Post-Trial Motion or her request for additur. The Honorable Alan Hertzberg, who

- 7 -

presided at trial, has authored a comprehensive, thorough, and well-reasoned Opinion, citing to the record and relevant case law in addressing Appellant's issues. After careful review of the parties' arguments and the record, we affirm on the basis of the trial court's Opinion. *See* Trial Ct. Op., 9/28/17, at 4-8 (concluding that: (1) the jury had a basis for finding many of Appellant's complaints were not credible or were caused by a pre-existing condition, including the testimony of her own witnesses; (2) the jury was not required to find that the instant accident caused the pain complained of by Appellant; (3) the parties presented contradictory evidence, which the jury was free to find credible or not credible; and (4) the non-economic damages award did not "shine forth like a beacon of injustice").

The parties are instructed to attach a copy of the trial court's September 28, 2017 Opinion to all future filings.

Judgment affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/10/2018

- 8 -

# Allegheny County - Department of Court Records
## Civil Division - Filings Information

County caseID:GD-15-023133
Case Description:Stemmerich vs Massung III etal
Official Docket Entry, Sort By Document Number Ascending

| Document Number | Filed Date | Title/Entry | Entry Classification | Filed By |
|---|---|---|---|---|
| 1 | 09/28/2017 | Opinion | Official Docket Entry | Alan D.Hertzberg |

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## CIVIL DIVISION

BARBARA STEMMERICH,

      Plaintiff,

      vs.

GLENN MASSUNG, III and
PITTSBURGH MOBILE TELEVISION, INC.,

      Defendants.

CASE NO. GD 15-23133

Superior Court Docket
No. 1151 WDA 2017

**OPINION**

JUDGE ALAN HERTZBERG

COPIES SENT TO:

COUNSEL FOR PLAINTIFF:

TIMOTHY CONBOY, ESQUIRE
733 WASHINGTON ROAD
SUITE 201
PITTSBURGH, PA 15228

COUNSEL FOR DEFENDANT:

MICHAEL LANG, ESQUIRE
983 THIRD STREET
BEAVER, PA 15009

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## CIVIL DIVISION

BARBARA STEMMERICH,

    Plaintiff,

    vs.

GLENN MASSUNG, III and
PITTSBURGH MOBILE TELEVISION, INC.,

    Defendants.

CASE NO. GD 15-23133

Superior Court Docket No. 1151 WDA 2017

## OPINION

Alan Hertzberg, Judge            Date Filed: September 28, 2017

The issue addressed in this Opinion is whether a jury verdict for pain and suffering of $600 is adequate compensation for Plaintiff Barbara Stemmerich's injuries. I find this jury verdict of $600 for pain and suffering is adequate, and my reasons for this decision are set forth below.

On January 31, 2014, Defendant Glenn Massung, while employed by Defendant Pittsburgh Mobile Television, Inc., was driving a tractor trailer on Butler Street in the City of Pittsburgh. The trailer component of the vehicle consisted of a tank used to haul recycled oil, but the tank was empty. It was 5:00 p.m., hence it was rush hour, traffic was heavy and Mr. Massung was moving slowly towards an intersection controlled by a traffic light. The traffic in front of him stopped, requiring him to stop by pressing both the clutch and brake pedals. Mr. Massung had oil on his boots, and his foot slipped off the clutch pedal, which caused the truck to lunge forward and collide with the rear of a car being driven by Mrs. Stemmerich. At impact, Mr. Massung did not think his truck

1

was moving very fast, and if he had to guess, less than twenty miles per hour. While the collision crushed a portion of the trunk of Mrs. Stemmerich's trunk, the air bag inside of her vehicle did not deploy. Mrs. Stemmerich's car seat back broke during the collision and she collapsed backwards in the car and could not control the continuing movement of the car or see where it was going. Her car ultimately stopped due to lack of momentum, but she then needed assistance from paramedics to exit her car. This experience severely upset Mrs. Stemmerich.

Mrs. Stemmerich, then 68 years old, had multiple pre-existing medical conditions. In June of 2006, she had reconstructive surgery of her right foot and ankle followed by reflex sympathetic dystrophy/complex regional pain syndrome of her right leg. In 2009, Mrs. Stemmerich developed sacroiliitis that caused low back pain, which was treated with injections into the sacroiliac joint. She also was diagnosed with fibromyalgia (overactive nerves that magnify the aches and pains over her entire body). In May of 2011, Mrs. Stemmerich had right knee replacement surgery. In December of 2013, she developed right shoulder rotator cuff tendonitis after reaching behind herself to grab something. It was being treated with physical therapy, anti-inflammatories, pain medication and steroid injections. Before the collision, Mrs. Stemmerich also had "bone on bone" arthritis of her left knee (another knee replacement surgery was contemplated), severe stenosis of the lumbar spine and a bone spur and arthritis in her right shoulder joint.

Paramedics took Mrs. Stemmerich from her vehicle to the emergency room of West Penn Hospital. Mrs. Stemmerich complained of pain in her right knee from it hitting the dashboard and of pain in her chest from the pressure of her seatbelt. An x-ray

2

showed no fracture or other obvious injury to her artificial right knee joint, and there was ecchymosis (bruising below the surface of the skin) visible on the left side of her chest. After diagnosing no serious injury, West Penn Hospital discharged Mrs. Stemmerich on the same day as the collision.

Due to her pre-existing medical conditions, Mrs. Stemmerich had a regular appointment with her pain management specialist, Dr. Conerman, three days later. She complained of pain in her low back and mid back radiating down the leg. Dr. Conerman treated Mrs. Stemmerich by continuing previously prescribed physical therapy, muscle relaxants and Vicodin, with the prescribed amount of Vicodin increased. During additional appointments, he also injected steroids into the most painful areas of her back. Three days after the collision Mrs. Stemmerich also was able to see the orthopedic surgeon who had been regularly treating her, Dr. Groff. She reported that her right shoulder felt much worse due to the collision. Dr. Groff treated Mrs. Stemmerich with continued physical therapy, pain medication and steroid injections. Mrs. Stemmerich, however, did not seem to be improving, and on August 20, 2014 an MRI test was done on her right shoulder that showed a partial tear of the rotator cuff. Then, on October 31, 2014, Dr. Groff performed arthroscopic surgery on her right shoulder, debriding the partial tear of her rotator cuff, decompressing the area around the rotator cuff, removing the pre-existing bone spur and removing the end of the clavicle bone to treat the pre-existing arthritis.

Mrs. Stemmerich filed a lawsuit against Mr. Massung and his employer on December 30, 2015 by means of a writ of summons, and she filed a complaint on March 22, 2016. On March 31 and April 3-4, 2017 I presided over a jury trial of the parties'

dispute. Mr. Massung testified as the plaintiff's first witness and admitted that his negligence caused the collision, which left Mrs. Stemmerich's money damages as the only dispute for the Jury to resolve. Mrs. Stemmerich's treating physicians, Dr. Conerman and Dr. Groff, testified by videotaped deposition, as did a pain management physician hired by the Defendants, Dr. Cosgrove. Dr. Conerman opined that the collision caused injuries to Mrs. Stemmerich's back and that her treatment would extend into the future. Dr. Groff opined that the collision caused the partial tear of Mrs. Stemmerich's right rotator cuff and the arthroscopic surgery he performed to repair it. Dr. Cosgrove, however, opined that the only injuries caused by the collision were the bruises from the seatbelt and aggravation of her pre-existing back problems, which resolved in a few months. The Jury also received an itemized list of past medical expenses in the total amount of $9,936.57.

The written Jury Verdict that I prepared classified damage amounts into three separate categories: (1) past medical expenses; (2) future medical expenses; and (3) pain and suffering. The Jury returned a verdict of $1,170 for past medical expenses, $0 for future medical expenses and $600 for pain and suffering. Mrs. Stemmerich appealed the verdict to the Superior Court of Pennsylvania following my denial of her Motion for Post-Trial Relief. In her appeal Mrs. Stemmerich argues that the Jury Verdict of $600 for pain and suffering must be set aside because it is inadequate and shocks one's sense of justice. I disagree and set forth below why I disagree.

"Generally, a verdict will not be disturbed merely on account of the smallness of the damages awarded or because the reviewing court would have awarded more." 22 Am. Jur. 2d, *Damages*, §1029 (1988). Furthermore, "[i]t is the exclusive province of the

jury, as factfinder, to hear evidence on damages and decide what amount fairly and completely compensates the plaintiffs." Matheny v. West Shore Country Club, 436 Pa. Super. 406, 407, 648 A.2d 24, 24 (1994). A jury verdict is not to be set aside on the basis of inadequacy unless the injustice of the verdict shines "forth like a beacon" and "where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff." Kiser v. Schulte, 538 Pa. 219, 648 A.2d 1, 4 (1994) (citing Elza v. Chovan, 396 Pa. 112, 152 A.2d 238 (1959)).

Under this standard Mrs. Stemmerich is able to reference instances from other cases where the test for setting aside a jury verdict is met. For example, in Yacabonis v. Gilvickas (376 Pa. 247, 101 A.2d 690 (1954)) the Pennsylvania Supreme Court upheld the trial court's grant of a new trial. Following an automobile accident, a passenger was hospitalized for nineteen days with eight fractured ribs, caught pneumonia in the hospital and was in an oxygen tent for twelve days and then went home where she stayed in bed for four months. The Pennsylvania Supreme Court determined that the jury's award to the passenger of medical expenses but nothing for pain and suffering was totally inadequate and affirmed the trial judge's decision to grant a new trial.

In Davis v. Mullen (565 Pa. 386, 773 A.2d 764 (2001)), the Pennsylvania Supreme Court explained the existence of two seemingly inconsistent lines of its cases. In the first line of cases the trial court correctly granted a new trial when a jury awarded medical expenses but no pain and suffering. See, e.g., Yacabonis above. The plaintiffs' injuries were too severe for the jury to have a reasonable basis for awarding medical expenses but no pain and suffering. In the second line of cases, the granting of a new trial when a jury awarded medical expenses but no pain and suffering was incorrect. See,

5

e.g., Boggavarapo v. Ponist, 518 Pa. 162, 542 A.2d 516 (1988) and Catalano v. Bujak, 537 Pa. 155, 642 A.2d 448 (1994). The Pennsylvania Supreme Court explained that the second line of cases differed because the jury either had a basis to find a plaintiff's pain and suffering complaints were not credible or were caused by a pre-existing injury. Hence, in Davis v. Mullen the trial judge was correct to deny Mr. Davis a new trial when the jury awarded him medical expenses but no pain and suffering because Mr. Davis missed no work, waited twenty days after the accident to be treated by a chiropractor for neck and back pain and the chiropractor was uncertain about whether the injuries could have been caused by three prior automobile accidents. The Pennsylvania Supreme Court also attributed the appropriateness of the jury verdict of no pain and suffering by Mr. Davis to "the power of the jury as the ultimate finder of fact and the need for the judiciary to guard against usurping the role of the jury." 565 Pa. 386, 393, 773 A.2d 764, 768.

While the Jury did award Mrs. Stemmerich a small amount for pain and suffering, the principles set forth in Davis v. Mullen when a jury awards no pain and suffering are applicable. Mrs. Stemmerich's injuries undoubtedly place her in the second line of cases because the Jury had a basis for finding many of her pain and suffering complaints were not credible or were caused by pre-existing injuries. Since she complained of only knee and chest pain at the Emergency Room (see Jury Trial transcript, p. 148), the Jury may have found her later complaints of back and shoulder pain were not credible. Both of Mrs. Stemmerich's physicians acknowledged it was very difficult to tell whether her pain was caused by the collision or her pre-existing medical conditions. Dr. Conerman was unable to state the percentage of her pain that was caused by the collision (see Videotaped Deposition Transcript of Dr. Conerman, p. 74), while Dr. Groff

6

acknowledged there was no way to definitively know whether her rotator cuff had been torn before the collision because no MRI study was done until after the collision (see Videotaped Deposition Transcript of Dr. Groff, pp. 55-56). Dr. Groff relied on Mrs. Stemmerich saying her shoulder pain increased after the collision for his opinion that the collision caused the rotator cuff tear (see Dr. Groff Transcript, p. 39), but the Jury may not have believed Mrs. Stemmerich was being honest with Dr. Groff. Dr. Conerman also acknowledged Mrs. Stemmerich's pre-existing and ongoing back pain was due to chronic ankle and knee problems that made her gait uneven (see Dr. Conerman Transcript, p. 57) as well as her severe lumbar spine stenosis (see Dr. Conerman Transcript, pp. 64-65 and 68-69).

Dr. Cosgrove, the physician hired by Mr. Massung, disagreed with both of Mrs. Stemmerich's physicians and attributed only the aggravation of Mrs. Stemmerich's pre-existing low back and neck pain, "primarily during the early months of 2014," to the collision. Videotape Deposition Transcript of Dr. Cosgrove, p. 66. Dr. Conerman additionally stated that Mrs. Stemmerich had pain on a 1-10 scale of 2 before the collision, 6 just after the collision, but the pain decreased to a level of 2 by April 2, 2014. See Dr. Conerman Transcript, pp. 54 and 80. Therefore, the Jury may have found this testimony by Dr. Conerman to be the most objective test of her pain from the collision, which in duration lasted no more than the 61 days from January 31 to April 2. Finally, to the extent photographs showing bruising from the seatbelt are an indication of pain, Dr. Cosgrove explained that Mrs. Stemmerich was more susceptible to the bruises because she was taking a blood thinner called Plavix. See Dr. Cosgrove Transcript, pp. 28-29.

Ms. Stemmerich, her husband and her daughter all testified that the collision, which had a significant emotional impact, was a life changing experience that prevented her from continuing to care for her grandchildren and doing many activities of daily living she used to do. With her physicians opining that her shoulder surgery and ongoing back pain were caused by the collision, Mrs. Stemmerich appeared convinced of this and therefore was very disappointed by the Jury's verdict of only $600 for her pain and suffering and other non-economic losses. However, a jury is "not obliged to believe that every injury causes pain or the pain alleged." Boggavarapu v. Ponist, 518 Pa. 162, 542 A.2d 516, 518. Mrs. Stemmerich's Jurors may have found her collision related pain was minimal, or it may have placed a lower value on her pain than she expected. But, "there is no mathematical formula to arrive at a figure for the intangible damages of pain and suffering." Kaufman v. Campos, 2003 PA Super 229, 827 A.2d 1209, 1212. In summary, the $600 pain and suffering Verdict does not shine forth like a beacon of injustice, and there is contradictory evidence of the losses sustained in the collision. See Elza v. Chovan, 396 Pa. 112, 152 A.2d 238. Therefore, granting a new trial would usurp the proper role of the Jury. Accordingly, I was correct in denying Mrs. Stemmerich's request for a new trial.

BY THE COURT:

_____ ,J.