J-A18046-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ALL BUT FURGOTTEN, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD KLOCHAK, YVONNE | : | |
| KLOCHAK, AND ALEXSANDRIA | : | |
| KLOCHAK | : | No. 44 WDA 2019 |
| | : | |
| Appellants | : | |

Appeal from the Order Entered December 19, 2018
In the Court of Common Pleas of Westmoreland County Civil Division at
No(s):  No. 4188 of 2018

BEFORE:  BOWES, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                    **FILED AUGUST 23, 2019**

Richard, Yvonne, and Alexsandria Klochak (collectively "the Klochaks")

appeal from the order that granted the petition for reasonable costs of care

for certain seized animals filed by All But Furgotten, Inc. ("ABF").  We affirm.

ABF is "a non-profit corporation that utilizes the services of Humane

Society Police Officers ("Officers") in enforcing Pennsylvania's Animal Cruelty

laws."  Trial Court Opinion, 2/27/19, at 4.  On March 8, 2018, Officer Andrea

Palmer of ABF received complaints about the neglect of animals at the

Klochaks' residence.  On March 14, 2018, Officers knocked on the door of the

Klochaks' home to investigate, but no one answered.  However, from that

location outside the home they experienced an overwhelming stench of feces

and urine coming from inside.  After further investigation, a warrant was

obtained and executed on March 16, 2018, resulting in the discovery of ninety-

nine animals in the seven-room house: thirty dogs, sixty-seven cats, one turtle, and one deer. The Pennsylvania Game Commission removed the deer and the turtle, while the cats and dogs were seized by ABF and seen by veterinarians for required medical care. The condition of six of the animals required that they ultimately had to be euthanized. The rest were fostered in volunteers' homes, kept at ABF, or boarded elsewhere.

On September 17, 2018, with criminal charges for animal cruelty pending against each of the Klochaks, ABF filed a petition for reasonable costs of care pursuant to the Costs of Care of Seized Animals Act ("the Act"), 18 P.S. §§ 30.1–30.10. After mishaps with service of the petition and a continuance, a hearing was held on December 14, 2018, at which ABF and the Klochaks, who proceeded *pro se*, presented witnesses. On December 19, 2018, the trial court issued an order granting ABF's petition and entering a costs order. The order required the Klochaks to pay within seven days approximately $260,000 in past expenses for the seized animals, plus continuing costs of care of at the rate of $15 per day for each of the ninety-one animals that remained directly or indirectly under ABF's control.

When the Klochaks did not pay pursuant to the order, ABF moved to enforce the order, and, later, served a notice of default pursuant to the Act. *See* 18 P.S. § 30.6(b)(3). On January 15, 2019, the Klochaks filed a timely notice of appeal from the costs order. On February 1, 2019, the trial court denied ABF's motion for possession of the animals based upon the Klochak's

failure to pay, and granted the Klochaks a stay of the costs order pending appeal.

On May 15, 2019, this Court *sua sponte* dismissed the appeal for failure to timely order and pay for transcripts, but later reinstated the appeal upon motion of the Klochaks. This Court granted ABF's subsequent motion to expedite consideration of the case, and scheduled oral argument to take place shortly after briefing had been completed. The appeal is now ripe for disposition.

The Klochaks present the following questions for our consideration:

[1.] Whether the trial court abused its discretion by entering an order, dated December 19, 2018, providing the sum of $261,191.57 due to [ABF], and an additional $15 per day for continuing costs of care of ninety-one (91) animals, pursuant to [the Act] when [ABF] failed to present evidence and/or invoices to prove what specific costs it has incurred, and continues to incur for each animal.

[2.] Whether [the Act] violates Article 1, section 1 of the Pennsylvania constitution, as the act requires [the Klochaks] to pay the costs of care of their seized property upon being charged, but not convicted, of a criminal offense; their property will be subject to forfeiture to [ABF] upon nonpayment of said costs of care; and [ABF] would have all rights and privileges over said property, notwithstanding the fact that failure to obtain a criminal conviction against [the Klochaks] would entitle [them] to repossession of said property and the return of all reasonable costs of care paid.

[3.] Whether [the Act] violates Article 1, section 9 of the Pennsylvania constitution as it requires [the Klochaks] to pay the costs of care of their seized property upon being charged, but not convicted, of a criminal offense; their property is subject to forfeiture upon nonpayment of said costs of care and thus deprives them of their property before they have an opportunity to be judged by their peers in a

criminal proceeding; and [ABF] would have all rights and privileges over said property prior to trial, notwithstanding the fact that failure to obtain a criminal conviction against [the Klochaks] would entitle [them] to repossession of said property and the return of all reasonable costs of care paid.

[4.] Whether [the Act] constitutes a bill of attainder and therefore violates Article 1, sections 9 and 18 of the Pennsylvania constitution as it punishes [the Klochaks] without judicial process; specifically, subjecting [their] property to forfeiture upon nonpayment of costs of care before they have an opportunity to be judged by their peers in a criminal proceeding.

Klochaks' brief at 4-5 (unnecessary capitalization omitted).

We begin our consideration of the Klochaks' questions with a review of the pertinent legal principles. "In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law." *Commonwealth v. Morris*, 958 A.2d 569, 578 (Pa.Super. 2008) (cleaned up). Similarly, "a challenge to the sufficiency of the evidence presents a pure question of law[.]" *In re Vencil*, 152 A.3d 235, 243 (Pa. 2017).

The statute in question provides that if animals are seized upon criminal charges relating to animal cruelty, a society, association, or other nonprofit organization providing care for the animals may file a petition for the reasonable costs of care for the seized animals. 18 P.S. § 30.3(a)(2). Reasonable costs of care are defined as follows:

(1) The reasonable costs of caring for seized animals, including the provision of food, water, shelter and medical care, beginning at the date of the seizure and continuing until the earlier of one of the following:

- 4 -

(i) At least 30 days following a hearing on a petition for costs of care.

(ii) The seized animals are no longer under the control of the petitioner.

(iii) The owner and defendant have relinquished all interests in the seized animals.

(2) Reasonable costs of care shall be limited to $15 per day per animal, in addition to necessary medical care, as determined by a licensed veterinarian and documented by invoices.

18 P.S. § 30.2.

Upon the filing of the petition, the court is to schedule a hearing, at which the petitioner has the burden of producing evidence to demonstrate the amount of reasonable costs and that the seizure was warranted. 18 P.S. § 30.5(c). No more than five days after the hearing, the court is required to enter an order granting or denying the petition. If it grants the costs of care, "the order shall include any filing fees paid by the petitioner to file the petition . . . and the amount of reasonable costs of care, both of which shall be paid by the defendant." 18 P.S. § 30.5(e)(1). The order further must contain "a schedule of monthly payments for costs of care to be paid by the defendant beginning 30 days after the initial payment designated in the order." 18 P.S. § 30.5(e)(2). "The defendant's ability to pay shall not affect the court's determination as to the amount of the reasonable costs of care." *Id*.

The costs order continues in effect until final judgment is issued on the criminal charges, the defendant/owner surrenders all rights to the animals, or

the animals are no longer under the petitioner's control. 18 P.S. § 30.7(a). If the criminal charges do not result in a conviction and the costs were timely paid pursuant to the order, the owner is entitled to return of all costs of care paid and of the animals. 18 P.S. § 30.7(b)(2). However, if the defendant does not pay the initial amount within seven days of service of the order, or fails at any time to make payment in accordance with the continuing order, all legal rights and privileges in the animals are forfeited to the petitioner. 18 P.S. § 30.6(a), (b).

In the case *sub judice*, ABF attached to its petition an affidavit from Officer Catherine Wilson indicating that the animals seized from the Klochaks had been subject to animal cruelty. Petition for Costs of Care, 9/17/18, at Exhibit B. ABF also produced invoices detailing medical costs for the animals, as well as a calculation of the cost to feed and shelter each of the animals at $15 per day, adjusted to account for the six animals that were euthanized at various times while in ABF's care. *Id*. at Exhibits C, F. ABF further included another affidavit of Officer Wilson, its shelter manager, attesting that the cost of food, water, and shelter for each animal exceeds $15 per day. *Id*. at Exhibit E.

At the hearing, ABF produced witnesses who testified to all of the above. Officer Wilson described the conditions in which the animals were found, with filth and debris everywhere, and reviewed photographs of the scene ABF encountered when the warrant was executed. N.T., 12/14/18, at 14-28. The

animals "suffered multiple degrees of neglect one way or another, covered with feces, urine, overgrown nails. There was urine burns on dogs, hot spots, flea dermatitis, ear infections, eye infections, missing hair, fearfulness." *Id*. at 15. Officer Wilson confirmed the accuracy of the invoices attached to the petition, and discussed the medical, grooming, and boarding costs. *Id*. at 34-36. Officer Palmer agreed with Officer Wilson's testimony, and added that the people executing the warrant had to wear masks because the stench in the Klochak's house was so bad, and that she herself had to leave the residence a number of times to vomit. *Id*. at 83-84. Veterinarians provided updated totals for medical costs, and discussed the necessary care they provided to the animals, including testing for infectious diseases; treatment for respiratory, ear, dental, and skin ailments; and the supply of fluids and pain medications. *Id*. at 91-98, 110-12.

Through cross-examination of ABF's witnesses and the presentation of their own, the Klochaks attempted to establish that the animals were beloved pets that were not neglected, and that the conditions encountered by the Officers in March 2018 were not typical. For example, specifying the various dogs and cats by name, they sought to prove that the animals that did not move well or had organ problems suffered from ailments common to animals of that age and breed, that a dog deemed "unresponsive" at the time the warrant was executed was deaf, and that the animals did receive medications for their conditions. *Id*. at 58-59, 99-104, 116-17. Dr. Constance Matson

testified that Alexsandria Klochak brought animals to her for treatment, that she generally followed through with treatment and care recommendations, that the animals she saw were in good spirits, and that Ms. Klochak always "tried to do the very best [she] could for them." *Id*. at 136, 151. However, Dr. Matson conceded that Ms. Klochak should not have tried to care for that many animals in her home, which was the result of Ms. Klochak's "difficulty turning animals away." *Id*. at 142-43. Magdalen Anderson testified the Klochaks "love animals" and "would sacrifice their lives before they would hurt or harm an animal." *Id*. at 172. Ms. Anderson explained that the conditions at the house were the result of "a perfect storm that just came towering down on top of them," in that there had been a fire at the residence in December, explaining the debris, that the elder two Klochaks had been ill, delaying plans to leave the residence to move to New Jersey. *Id*. at 169-72.

The trial court credited ABF's witnesses and concluded that the seizure of the animals was warranted and that ABF established its entitlement to $15 per day per animal plus medical expenses. Order, 12/19/18, at 1.

The Klochaks present two challenges to the sufficiency of the evidence to sustain the trial court's findings. First, they contend that the trial court failed to make a determination as to when the timing of the euthanizing of animals in ABF's care, such that no further costs were incurred for those animals. Klochak's brief at 9. Second, the Klochaks argue that, now that

most of the animals are in foster care, ABF no longer bears the costs of caring for those animals. *Id*. Neither argument merits relief.

As to the six animals that veterinarians determined required euthanizing, the dates of death were provided in the petition, and the $15 per day for each of those animals was deducted for the relevant time periods. *See* Petition for Costs of Care, 9/17/18, at Exhibit F. Regarding the continuing care, Ms. Wilson testified that $15 per day per animal is not enough to pay for boarding, food, shelter, and water for each of them. N.T., 12/14/18, at 36. She indicated that when one takes an animal for boarding, it typically costs $25 per day. *Id*. Further, she indicated that ABF is responsible for the cost of food, medication, and enrichment items, such as beds, treats, and toys, even when the animal is fostered by a volunteer. *Id*. at 75, 79.

While we may question whether, excluding medical care, ABF actually expends $1,380 per day to care for the now ninety-one animals within its control, given that the cats are being maintained on ABF's premises, and all but five of the dogs are being fostered by volunteers, the trial court's findings to that effect are supported by the record based upon its credibility determinations. Further, while the Act requires that medical expenses be documented by invoices, there is no such requirement for non-medical costs of care. *See* 18 P.S. § 30.2(2). We are unwilling to hold that $15 per day is *per se* unreasonable, even in the instant circumstances wherein the sheer number of animals involved may suggest a volume discount. As such, we

cannot conclude that the evidence was insufficient to support the trial court's costs order.

With their remaining arguments, the Klochaks challenge the constitutionality of the Act under Article I, §§ 1, 9, and 18 of the Pennsylvania constitution. The trial court concluded that the Klochaks waived these arguments by failing to raise them prior to filing their 1925(b) statement. Trial Court Opinion, 2/27/19, at 6-7. We agree.

> Pennsylvania Rule of Appellate Procedure 302(a) provides that "issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Hence, only claims properly presented in the lower court are preserved for appeal. Indeed, even issues of constitutional dimension cannot be raised for the first time on appeal.

**Coulter v. Ramsden**, 94 A.3d 1080, 1089 (Pa.Super. 2014) (cleaned up).

The closest the Klochaks came to alluding to any of their appellate counsel's arguments while they proceeded *pro se* before the trial court is found in the following exchange at the hearing.

> [A. Klochak]: . . . [The Act], after reviewing it, I feel in some aspects it leads some unconstitutionality to the person. We haven't even been formally proven of a crime yet--charged with a crime. But yet as to these people that may not even have legally had the right to seize our pets to hand over hundreds of thousands of dollars.
>
> THE COURT: For clarification, this act triggers upon the charging of a criminal animal cruelty charge under the criminal code under Title 18. Then that causes the seizure which triggers [the Act]. So regardless of where you stand in your proceeding, arraigned or not, you have already been charged, a seizure has already been completed. So this is the appropriate place in civil court to address [the Act] in accordance with the statute.

- 10 -

[A. Klochak]:      With the statute.  But -- and I think what hasn't been proven completely is that they have an active shelter under their organization, and they have used our case to bring in funds to substantiate their own cause.  It's like a self-serving cause.  Let's hardball these citizens and we will get paid and hopefully we will win the criminal case.

Meanwhile, we forfeiture [*sic*] all this money ahead of it, without even proving.  They have used this case -- and we don't even know where our pets are still to this day, which I thought when we left today, we would know where they are.  And there's -- if they are safe and where they are put up.

N.T., 12/14/18, at 185-86.

The above does not in any way resemble the constitutional arguments the Klochaks now present on appeal.  The mere utterance of the word "unconstitutional" was not sufficient to preserve any and all constitutional challenges that might be raised once the Klochaks obtained counsel.[1] "[A]lthough this Court is willing to construe liberally materials filed by a *pro se* litigant, a *pro se* appellant enjoys no special benefit." **Commonwealth v. Tchirkow**, 160 A.3d 798, 804 (Pa.Super. 2017).  "Any layperson choosing to

_____

[1] The Klochaks' failure to properly raise a constitutional challenge in the trial court is further evidenced by their lack of notice to the Attorney General at the trial court level as is required by Pa.R.C.P. 235 (providing that a party challenging the constitutionality of a statute in a case in which the Commonwealth is not a party "shall promptly give notice thereof by registered mail to the Attorney General of Pennsylvania").  However, as they provided the notice when raising the issue on appeal, we do not base our waiver finding upon Rule 235.  **See**, **e.g.**, **Dranzo v. Winterhalter**, 577 A.2d 1349, 1354 (Pa.Super. 1990) (explaining that the prompt notice requirement of Rule 235 may be satisfied "where the trial court did not address the constitutional issue and where the Attorney General was duly notified when the issue was raised on appeal").

represent himself in a legal proceeding must, to some reasonable extent, assume the risk that his lack of expertise and legal training will prove his undoing." ***Commonwealth v. Gray***, 608 A.2d 534, 550 (Pa.Super. 1992) (cleaned up). As such, despite the Klochaks' *pro se* status in the trial court, we hold that the Klochaks' constitutional challenges to the Act are waived.

Accordingly, we affirm the trial court's order. We also hereby lift the stay on the December 19, 2018 costs order. The Klochaks shall make payment in accordance with the order within seven days of service of this memorandum, or be subject to the consequences for nonpayment pursuant to 18 P.S. § 30.6(b).

Order affirmed. Stay order lifted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/23/2019